Virginia DeLUCE, Plaintiff-Appellee,

v.

FORT WAYNE HOTEL, a Michigan corporation, Defendant-Appellant.

No. 14869.

United States Court of Appeals Sixth Circuit.

Dec. 28, 1962.

# 854

Konrad Kohl, Detroit, Mich., Carl F. Davidson, Detroit, Mich., on brief, for appellant.

William J. Weinstein, Detroit, Mich., Gussin, Weinstein & Kroll, Detroit, Mich., on brief, for appellee.

Before McALLISTER and WEICK, Circuit Judges, and BOYD, District Judge.

## McALLISTER, Circuit Judge.

This is an appeal by the Fort Wayne Hotel from a judgment in the amount of $25,000 awarded to one of its guests, Virginia DeLuce, appellee herein, who claimed to have suffered injury and disability as a result of being bitten by a rat on the hotel premises. Her claim is based on negligence of the hotel in failing to keep its premises free from rats.

According to the evidence introduced on her behalf, Miss DeLuce, after being bitten, was treated by first aid and given an injection of penicillin. Afterward, at a hospital, she was given a tetanus anti-toxin injection, and a further injection of penicillin. According to appellee's evidence, she later developed post encephalitic Parkinsonism and, two years after the accident, at the time of the trial, she suffered from that disease, be-ing permanently disabled and incapacitated for the work she had previously carried on as an actress, singer, and dancer in films, television, night clubs, and Broadway shows.

The district court charged the jury that the relevant statute of the State of Michigan made it mandatory upon a hotel owner to keep his premises free from rats; that the statute was not only mandatory but imposed an absolute liability rather than a duty to use due care; that if appellee had been bitten by a rat while on the hotel premises, appellant hotel would be guilty of negligence as a matter of law; and if appellee had, at the time, been free from contributory negligence, she was entitled to recover. The court properly instructed the jury on the questions of proximate cause and contributory negligence.

Appellant hotel claims that the district court erred in refusing to charge the jury that the hotel was not liable for the injury unless it knew or, by the exercise of reasonable care, should have known, of the presence of rats on its premises.

The background of the case is as follows: Miss DeLuce was a registered guest at the hotel on the date of the accident. On the day after her arrival, arrangements were made by her producer to present a preview of a show for executives of an automotive company at the home of one of the executives. Miss DeLuce had been informed that there was a swimming pool where the performance was taking place, and that she could go swimming if she so desired. She brought her swim equipment, which consisted of a snorkel, a mask, hand fins, and foot fins. Because of the coolness of the weather, she decided not to go swimming. Following the conclusion of the show at 8:30 P. M., a buffet dinner was served, and she, with other performers, afterward left the executive's home at approximately 10:00 P. M. and was taken back to the appellant hotel. When she got out of the car and entered the hotel, she had, with her, all her music, and swimming paraphernalia. She went

through the lobby, put her things on a chair, and went to the desk to ascertain whether she had any messages. She then made a call to see if certain performers in the show had returned to the hotel. As she went back to the desk, she saw a man in the vestibule, who appeared to be hitting the top of the radiator with one of her swim fins. She ran across the lobby, through the door and found that the man had thrown her fins down on the floor by the radiator. She reached down to pick them up and felt a sharp bite on her hand. She stood up quickly and a rat, approximately a foot long, was hanging from her finger. Calling for help, she opened the door of the hotel with her left hand, rushed out onto the sidewalk and started to shake the rat, and it fell and ran away.

Charles B. Nunley, an employee of the hotel, was called as an adverse witness by plaintiff's counsel. Mr. Nunley was a night bellman, whose duties required him to be, at times, in front of the hotel to carry guests' baggage to and from their rooms. There was no doorman at the hotel. Mr. Nunley testified that he often saw rats coming out of the alley around the hotel. The alley was seventy feet from the hotel entrance. He had also seen rats on the sidewalk outside of the hotel, and he had actually chased them off the sidewalk. He testified that the hotel doors had been left open that night, prior to the time Miss DeLuce was bitten by the rat. The vestibule, where she had stooped down to pick up her swim fins, and the lobby floor are level with the sidewalk. When Mr. Nunley was asked whether rats could run right into the hotel when the door was open, he said: "If somebody scares a rat, you know, you can't tell which way he will run." When Miss DeLuce was bitten by the rat, Mr. Nunley was serving food in guests' rooms upstairs, and had just come down on the elevator. The Fort Wayne Hotel produced Mr. Bart Edds as a witness. He testified that he was maintenance man for the hotel, and had seen, in the alley next to the hotel, numerous rats flattened out where

cars had run over them at night. Ivor Bennett, a former pest-control operator, whose company was employed by the hotel for the extermination of vermin, including rats, testified that the location where the Fort Wayne Hotel was situated, was one of the worst rat-ridden areas in the city. He called it the "second worst place" in Detroit for rats.

Other witnesses testified as to seeing rats in the adjacent alley, and also as to seeing the rat clinging to the hand of Miss DeLuce before she ran to the street and shook it off. Rats are ferocious and dangerous carriers of disease and, in Michigan, a bounty is paid for killing them. Section 18.761, Michigan Statutes Annotated, Comp.Laws 1948, § 433.251.

The issue before us is whether there was an absolute liability on the part of the hotel to keep its premises free from rats, or whether it was subject only to the duty to use due care.

The pertinent statutory provision of the Housing Law is Section 5.2846, Michigan Statutes Annotated, Comp.Laws 1948, § 125.474, which provides:

"Cleanliness of dwellings. Sec. 74. Every dwelling and every part thereof shall be kept clean and shall also be kept free from any accumulation of dirt, filth, rubbish, garbage or other matter in or on the same, or in the yards, courts, passages, areas or alleys connected therewith or belonging to the same. The owner of every dwelling shall be responsible for keeping the entire building free from vermin. The owner shall also be responsible for complying with the provisions of this section except that the tenants shall be responsible for the cleanliness of those parts of the premises that they occupy or control."

It is also provided in the Housing Law as follows:

"The word 'shall' is always mandatory and not directory, and denotes that the dwelling shall be maintained

in all respects according to the mandate as long as it continues to be a dwelling." Sec. 5.2772, Michigan Statutes Annotated, Comp.Laws 1948, § 125.402.

As to whether the statute imposes an absolute liability upon the appellant to keep its premises free from rats, or whether it is obliged only to use due care, we find guidance in certain adjudications of the Supreme Court of Michigan.

In Conners v. Benjamin I. Magid, Inc., 353 Mich. 628, 91 N.W.2d 875, 67 A.L.R. 2d 1001, in an action brought on behalf of a child against the owner of a dwelling, for negligence on the part of the owner in failing to keep his building free from rats, and claiming that as a result of such negligence, the child had sustained injuries when attacked by rats in the living quarters of the house which were rodent-infested, the court, speaking through Mr. Justice Black, stated:

"Plaintiff's declaration and the pretrial statement are plainly couched in terms of a cause of action for negligence arising out of the asserted violation of this statute. Accordingly, the question whether such statute imposes an absolute duty, for the violation of which the law recognizes no excuse, is one we need not consider. * * * The duty of the defendant landlords—that of responsibility for keeping the entire building free from vermin—was steadily breached by them. Of that there can be little question. The record is replete with evidence of complaint and notice to defendants having to do with rodent infestation. Previous municipal orders, looking toward critically required corrective action, received only token consideration by defendants. A week prior to the occasion of plaintiff's injuries defendant Benjamin I. Magid was personally informed of conditions which, if let to continue, would amount (as applied to this multiple-apartment building) to a compound

violation of the second sentence of said section 74. All he did was to leave wire and plaster with plaintiff's father and make leisurely arrangements for fumigation of the building."

In Annis v. Britton, 232 Mich. 291, 292, 205 N.W. 128, an action was brought for injuries resulting to the lessee of a house on the ground that a landlord was negligent in failing to keep the dwelling in repair, and that his negligence was the proximate cause of the injury. In the Annis case, the State Housing Law provided: "Every dwelling and all parts thereof shall be kept in good repair by the owner."

In reversing a directed verdict in favor of the landlord and granting a new trial, the Supreme Court of Michigan held:

"If plaintiff has any right to recover damages in an action of tort it is because the statute of 1917 required defendant to keep the premises in repair. This, of course, imports that the need of repair in fact existed, was known to defendant, or his agent having charge of the premises, or should have been known had reasonable supervision been exercised in obedience to the statutory mandate and of neglect thereafter to make repair."

In Morningstar v. Strich, 326 Mich. 541, 40 N.W.2d 719, the State Housing Law, there applicable, provided that "every dwelling and all the parts thereof including plumbing, heating, ventilating and electrical wiring shall be kept in good repair by the owner." In sustaining a judgment for plaintiff, who was burned by steam coming from a defective valve, the court referred to the case of Annis v. Britton, supra, and quoted that portion of the opinion above set forth, saying that the statute required defendant to keep the premises in repair and that this imported that the need of repair in fact existed and was known to the defendant, or his agent having charge of the premises, or should have been known if rea-

sonable supervision had been exercised. The court further said:

"Viewing the testimony in the light most favorable to plaintiff, the failure of [defendant], through his agent to take the necessary remedial steps to maintain the heating system in good repair was the proximate cause of the accident, * * *. There is no question [defendant] had notice of trouble with the valves and that he came to the house with the plumber. The defective condition of the valve in question, if it was on the radiator, should have been apparent upon the examination of it that either was made or should have been made."

The foregoing cases hold directly, or by implication, that even though mandatory language is used in which it is set forth that "every dwelling * * * shall be kept in good repair by the owner," nevertheless it is required that the owner know, or should know, in the exercise of reasonable care, of the danger, before he can be held liable.

In Conners v. Benjamin I. Magid, Inc., supra, the court declared that the plaintiff's declaration and pretrial statement were plainly couched in terms of a cause of action for negligence arising out of the asserted violation of the statute, and that, accordingly, the question whether the statute imposed an absolute duty for the violation of which the law recognizes no excuse, was one the court did not need to consider.

In the instant case, the plaintiff's declaration was, likewise, plainly couched in terms of a cause of action for negligence, arising out of the asserted violation of the statute, and the case should, accordingly, be remanded for a new trial, as in Conners v. Benjamin I. Magid, Inc., supra.

In view of the fact that the Michigan statute which uses mandatory language, has not been held by the Supreme Court of that State to impose an absolute liability, but only liability if the owner knew or should have known of such dangerous condition of his premises, in Annis v. Britton, supra, and Morningstar v. Strich, supra, we are of the view that, by analogy, the same rule applies to the owner's responsibility for keeping his premises free from rats.

It is further contended by appellee that the evidence of the presence of rats in the alley adjoining the hotel and on the sidewalk in front of the hotel, created an affirmative duty on the part of the hotel to protect its paying guests from the foreseeable event that such rats might enter the hotel through its doors, especially in view of the fact that the doors were on a level with the sidewalk, and the hotel took no precautions to keep the rats out of its vestibule and lobby. In brief, counsel for appellee submits that under the uncontradicted and uncontested facts of the case, the hotel must have foreseen that a rat might enter the hotel if the doors were left open. Negligence and contributory negligence are ordinarily questions of fact for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence becomes one of law for the court. There is no evidence that any rats had ever been seen in the hotel vestibule or lobby before the night of this accident, or that any guest had ever been bitten by a rat. Although counsel for appellee cogently argues this issue, we are of the view that the question of whether it was reasonably foreseeable that a rat might enter the vestibule or the lobby of the hotel is a question of fact for the jury, and failure of the hotel to use such care as was necessary to avoid a danger, which should and could have been anticipated, would constitute negligence. If, through the hotel's failure to use due care to keep its premises free from rats, the rat in question was on the premises at the time of the accident, the hotel would be guilty of a violation of the statute and, therefore, negligent per se.

In accordance with the foregoing, the judgment is set aside and the case remanded for a new trial.