In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-109 CV


____________________



RHONDA AIMEE GAMBLE AND JAY GAMBLE, Appellants



V.



LARRY PEYTON AND BARBARA PEYTON, Appellees






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 04-03-02310-CV






OPINION


 This appeal requires us to decide whether a landowner is responsible for an injury
sustained by a rider in a fall from a horse stung by fire ants. The appellant and plaintiff
below, Rhonda Aimee Gamble (1), contends material issues of fact preclude the summary
judgment granted on her premises liability claim against Larry Peyton and Barbara Peyton. 
For the reasons discussed herein, we affirm the trial court's judgment.

 Rhonda Gamble and her future husband Jay (2) purchased Gabe, a green broke two-and-one-half-year-old palomino Quarter Horse, from the Peytons at their Montgomery
ranch. The day after the Gambles paid the Peytons for the horse, the group walked to a
small movable metal pen located in the pasture behind the barn. While they were standing
outside the pen, Larry Peyton mentioned to Rhonda Gamble that he had been battling fire
ants all summer and that the ants had been bad that year. He did not mention any
particular location on the property or warn Gamble to be careful of ants in the pen. Neither
Rhonda nor Jay Gamble observed any visible fire ant mounds inside the pen. Gabe's
trainer provided a mounted demonstration of the horse's training, then asked Gamble if she
wanted to ride. An experienced rider, Rhonda Gamble mounted the horse and rode around
the perimeter of the pen for what Jay Gamble estimated to be ten to fifteen minutes. As
Rhonda Gamble removed her right foot from the stirrup to dismount, Gabe began to crow
hop. Gamble testified that as she bounced in the saddle, she felt "an explosion of electrical
activity from my waist to my toes," lost control of her lower body and fell to the ground. 
The trainer took the horse to the barn while Jay Gamble and the Peytons tended to Rhonda
Gamble. When the trainer returned to the pen, she mentioned that Gabe had fire ants all
over his back legs. Gamble sustained a back injury requiring surgery. 

 Citing Steeg v. Baskin Family Camps, Inc., 124 S.W.3d 633, 639 (Tex. App.--Austin 2003, pet. dism'd), Sapone v. Grand Targhee, Inc., 308 F.3d 1096, 1103-05 (10th
Cir. 2002), and Halpern v. Wheeldon, 890 P.2d 562, 566 (Wyo. 1995), Gamble contends
a fact issue exists regarding whether her injuries resulted from an inherent risk of equine
activity. Sapone and Halpern involved construction of Wyoming's Recreation Safety Act. 
They are readily distinguishable from this case. Both opinions contrasted the fact-specific
analysis of duty required under Wyoming's statute from the analysis appropriate for
statutes that include a nonexclusive list of inherent risks. Sapone, 308 F.3d at 1102;
Halpern, 890 P.2d at 566. Halpern recognized that when a court is presented with a case
under a statute with a nonexclusive list of inherent risks, "it may compare the facts of the
case to the list of legislatively defined inherent risks and decide, as a matter of law,
whether the plaintiff's injury resulted from an inherent risk." Id. 

 In Texas, a person cannot be held liable for personal injuries sustained by a
participant in an equine activity if the injury results from dangers or conditions that are an
inherent risk of the activity. Tex. Civ. Prac. & Rem. Code Ann. § 87.003 (Vernon
2005). Unlike Wyoming, our legislature has enacted a nonexclusive list of inherent risks
of equine activity. Id. Included in this list are the propensity for a horse to behave in
ways that may result in personal injury to a person on the horse and the unpredictability
of a horse's reaction to an unfamiliar animal. Tex. Civ. Prac. & Rem. Code Ann. §
87.003(1), (2) (Vernon 2005). Appellant's reliance on Steeg is misplaced. The injury in
Steeg occurred as a result of a saddle slipping and there was some evidence supporting the
claim that negligent saddling contributed to the injury. Steeg, 124 S.W.3d at 638-39. 
Reasoning that negligent saddling is not an inherent risk of horseback riding, the Austin
Court of Appeals held that fact issues precluded summary judgment. Steeg, 124 S.W.3d
at 638-39. Gamble's injury occurred as a result of the horse's violent reaction to being
stung by ants. The injury-causing event here clearly falls within the statutorily defined
inherent risks; therefore, the Peytons are not liable for Gamble's injuries unless one of the
statutory exceptions of Section 87.004 applies. Tex. Civ. Prac. & Rem. Code Ann. §
87.004 (Vernon 2005). 

 In Texas, a person is liable for damages arising from personal injury in an equine
activity if the injury "was caused by a dangerous latent condition of land for which
warning signs, written notices, or verbal warnings were not conspicuously posted or
provided to the participant, and the land was owned, leased, or otherwise under the control
of the person at the time of the injury or death and the person knew of the dangerous latent
condition." Tex. Civ. Prac. & Rem. Code Ann. § 87.004(3) (Vernon 2005) (3) (emphasis
added). Gamble argues a fact issue exists regarding whether a dangerous latent condition
of land caused her injury. A bed of ants, she argues, is as much a condition of land as a
plant, a man-made object, or a concealed hole. (4) However, a structure built by ants is not
at issue in this case, as it might be if, say, a horse stumbled on a crawfish tower or tripped
in a mole hole and threw its rider. In this case, the horse unexpectedly reacted to wild
animals. The Peytons argue that the ants themselves cannot be a dangerous latent
condition of land because ownership and control of land does not convey ownership and
control over wild animals on the land. 

 The Peytons rely primarily on two cases that pre-date the equine activities statute: 
Gowen v. Willenborg, 366 S.W.2d 695 (Tex. Civ. App.--Houston 1963, writ ref'd n.r.e.),
and Nicholson v. Smith, 986 S.W.2d 54 (Tex. App.--San Antonio 1999, no pet.). In
Gowen v. Willenborg, wasps openly nesting on a billboard stung a child trespasser as he
climbed the structure. 366 S.W.2d at 696. The appellate court affirmed the defendant's
summary judgment. Id. at 698. "Generally the law does not require the owner or
possessor of land to anticipate the presence of, or guard an invitee against harm from,
animals ferae naturae unless such owner or possessor has reduced the animals to
possession, harbors such animals, or has introduced onto his premises wild animals not
indigenous to the locality." Id. at 697. The presence of dangerous insects in or near an
artificial structure not in itself unreasonably dangerous does not transform the structure
into one involving an unreasonable risk of harm. Id. at 698. By analogy, fire ants are
normally present in nature and the riding pen is designed neither to protect against nor to
control tiny insects; therefore, the presence of fire ants inside an outdoor riding pen is a
natural condition. It is not an unreasonably dangerous condition requiring the statutory
warnings.

 Nicholson v. Smith, 986 S.W.2d 54 (Tex. App.--San Antonio 1999, no pet.),
examined premises liability for personal injuries caused by wild animals in general and fire
ants in particular. A resident of a privately owned RV park died after being stung over
1,000 times by fire ants while working under his house trailer. Id. at 57. The appellate
court affirmed summary judgment for the landowner. Id. at 64. Relying on the precedent
established in Gowen v. Willenborg, the appellate court reasoned that the resident was
attacked by indigenous wild animals in their natural habitat, and the landowners did
nothing to attract the fire ants onto their property or to incite aberrant behavior. Id. at 62. (5) 
"A good deal of the vegetation in Texas stings, sticks or stinks. Any number of insects
and animals can hurt, or even kill you." Id. "Under ordinary circumstances, Texas
landowners do not have a duty to warn their guests about the presence and behavior
patterns of every species of indigenous wild animals and plants which pose a potential
threat to a person's safety, as well as the extent of that threat. If a landowner was required
to affirmatively disclose all risks caused by plants, animals, and insects on his or her
property, 'the burden on the landowner would be enormous and would border on
establishing an absolute liability.'" Id. at 63-64 (citing Brunelle v. Signore, 215
Cal.App.3d 122, 263 Cal.Rptr. 415, 419-20 (1989)). 

 Gamble contends the doctrine of ferae naturae does not apply when the premises
owners know or should know of the animals' existence. She contends that the Peytons'
knowledge of the presence of ants in the pen is a fact issue. Most of the cases she relies
on, however, do not involve animals in their natural habitat. She cites CeBuzz, Inc. v.
Sniderman, 466 P.2d 457, 459 (Colo. 1970), where a tarantula bit a customer shopping
for bananas. An employee had seen an insect crawl out of the bananas two days earlier,
and the manager remarked that the last batch of bananas had been full of tarantulas. Id.
at 250. The appellate court held the store, knowing the insects might be found in the
bananas it was offering for sale, had a duty to take measures to guard against injury when
the customers handled the bananas. Id. at 459-60. In Williams v. Milner Hotels Co., 36
A.2d 20 (Conn. 1944), a long-term hotel patron complained to the manager about rats in
the room some time before one bit him while he slept. Id. at 20-21. The hotel argued for
a standard of care commensurate with the character of the establishment, but the appellate
court held the innkeeper had a duty to keep his inn in a reasonably safe condition and
whether he acted with ordinary prudence was an issue for the jury. Id. at 21-22. In
DeLuce v. Fort Wayne Hotel, 311 F.2d 853 (6th Cir. 1962), an actress bitten by a foot-long rat in a hotel lobby sued under a statute that required an owner to keep the entire
building free of vermin. Id. at 855. The hotel employees knew rats entered freely from
the alley and took no precautions to prevent it. The appellate court reversed the judgment
for the plaintiff and remanded the case for a new trial because whether it was reasonably
foreseeable that a rat might enter the hotel lobby is a question of fact for the jury. Id. at
857. These cases all involve the presence of wild animals within the confines of
commercial buildings.

 Two of Gamble's cited cases involve animal attacks out-of-doors. In Carlson v.
State, 598 P.2d 969, 970 (Alaska 1979), plaintiff was mauled by a bear. Potential liability
arose not from a responsibility to control the bear, but from the accumulation of garbage
that attracted the bear to the highway turnout where it encountered and mauled the
plaintiff. Id. at 970-71. The decision to not remove litter from the turnout was an
operational decision for which the State was not immune. Id. at 972. Because the alleged
negligence was the creation of a dangerous situation by not removing litter, as opposed to
its inherent possession and control of wild animals, the doctrine of ferae naturae did not
apply. Id. at 973. In Williams v. Gibbs, 182 S.E.2d 164 (Ga. App. 1971), a rattlesnake
bit a patron walking on the sidewalk towards the restroom of the combination restaurant
and service station. Id. at 165. No snakes had been seen on the premises in six years of
ownership. The court held the attack was not a foreseeable consequence of allowing the
grass along the sidewalk to grow to six inches in height. Id. The appellate court noted
that the law does not require a landowner to anticipate the presence of and guard against
harm by wild animals. None of Gamble's cases stand for the proposition that an owner
is responsible for the actions of insects outdoors in a place where the particular animal is
normally found. 

 Gamble argues the accident occurred in an improved horse pen, and fire ants should
not be present in such a structure. The pen itself was not involved in the accident, and
nothing about the pen made either the horse or the ants more dangerous. Gamble could
not reasonably expect that an outdoor structure designed to contain horses would protect
the horse from encountering ants. Unlike a building with walls and a floor, the pen
presented no barrier to terrestrial insects. 

 Gamble contends the Peytons knew they had a fire ant problem but kept the danger
a secret. Her claim is based entirely upon Larry Peyton's conversation, as they stood at
the pen before the demonstration commenced, that he had been battling fire ants and they
were bad that year. This statement reveals a general awareness of the possible presence
of fire ants, but it also demonstrates that he disclosed that possibility to Gamble before she
mounted the horse. Gamble contends this warning is inadequate under the equine activity
statute and that a fact issue exists as to whether the Peytons posted the statutory warning. 
See Tex. Civ. Prac. & Rem. Code Ann. § 87.005 (Vernon 2005). Section 87.005
requires that a warning regarding inherent risks be posted by an "equine professional" if
the professional "manages or controls a stable, corral, or arena where the professional
conducts an equine activity." Id. "Equine professional" is a statutorily defined term that
means "a person engaged for compensation: (A) to instruct a participant or rent to a
participant an equine animal for the purpose of riding, driving, or being a passenger on the
equine animal; or (B) to rent equipment or tack to a participant." Tex. Civ. Prac. &
Rem. Code Ann. § 87.001(5) (Vernon 2005). Gamble bought this horse from the
Peytons; she did not rent the horse or any tack, and she received no riding instruction for
which she paid compensation. Section 87.005 does not apply. Furthermore, as we have
already determined that the presence of fire ants inside an outdoor riding pen is not an
unreasonably dangerous condition of land, the warning provisions contained in Section
87.004(3) also do not apply. Even for a dangerous latent condition, Section 87.004(3)
does not apply if the participant is provided with a verbal warning. See Tex. Civ. Prac.
& Rem. Code Ann. § 87.004(3) (Vernon 2005). Larry Peyton informed Gamble that they
had been having problems with ants. Gamble contends the appellees failed to warn her to
be careful of fire ants while in their enclosed pen, but Larry Peyton provided Gamble with
a verbal warning coextensive with her evidence of his knowledge that ants could be present
where she was riding the horse. 

CONCLUSION


 The unpredictability of a horse's reaction to another animal is an inherent risk of
an equine activity. Therefore, the landowners are not liable for personal injuries sustained
by a horseback rider unless the injuries were caused by a dangerous latent condition of
land for which warnings were not provided. In this case, the rider's injuries were caused
by the horse's reaction to being stung by fire ants. Ants are wild animals neither
controlled nor harbored by the landowner, and the landowner provided to the rider a verbal
warning of the possible presence of ants on the premises. We hold the trial court did not
err in granting the landowners' summary judgment. The judgment is affirmed.

 AFFIRMED. 







 _______________________________

 STEVE McKEITHEN

 Chief Justice




Submitted on September 29, 2005

Opinion Delivered December 22, 2005


Before McKeithen, C.J., Gaultney and Kreger, JJ.
1. A second plaintiff, Jay Gamble, non-suited his claims in the trial court. Although
his name appears on the notice of appeal, Jay Gamble did not file a brief or join in the
brief filed by his wife, and the brief does not assert error regarding the non-suited claims. 
We therefore dismiss the appeal of Jay Gamble for want of prosecution. See Tex. R. App.
P. 38.8.
2. We use the plaintiff's married name throughout this opinion. 
3. The correct wording of the statute is "dangerous latent condition of land" not
"dangerous or latent condition of land" as asserted by the appellant.
4. The appellant's examples of conditions of land are provided as part of her
argument for a Section 87.004 exception to the application of Section 87.003. These other
conditions appear to fall within the inherent risks mentioned in Section 87.003, and the
appellant does not suggest otherwise. 
5. The fire ant may be native species, Solenopsis geninata or S. xyloni, or may be
an introduced species, S. invicta, a native South American species introduced to the
southern United States in the 1930's and present in eastern Texas in incalculable numbers
since the 1950's. See generally, http://fireant.tamu.edu/antfacts/identification.html. 
Because the Peytons did not introduce the ants to their property, and Gamble did not raise
the possibly non-indigenous character of the fire ant as a ground for avoiding summary
judgment, we will follow Nicholson and apply the doctrine of ferae naturae to fire ants.