Rhonda Aimee GAMBLE and
Jay Gamble, Appellants,

v.

Larry PEYTON and Barbara
Peyton, Appellees.

No. 09–05–109 CV.

Court of Appeals of Texas,
Beaumont.

Submitted on Sept. 29, 2005.

Delivered Dec. 22, 2005.

Maggie D. Conner, R. Gary Stephens, Law Office of R. Gary Stephens, Houston, for appellants.

James A. Newsom, Ann Moore, Munisteri, Sprott, Rigby, Newsom & Robbins, P.C., Houston, for appellees.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

This appeal requires us to decide whether a landowner is responsible for an injury sustained by a rider in a fall from a horse stung by fire ants. The appellant and plaintiff below, Rhonda Aimee Gamble [1],

---

1. A second plaintiff, Jay Gamble, non-suited his claims in the trial court. Although his

contends material issues of fact preclude the summary judgment granted on her premises liability claim against Larry Peyton and Barbara Peyton. For the reasons discussed herein, we affirm the trial court's judgment.

Rhonda Gamble and her future husband Jay [2] purchased Gabe, a green broke two-and-one-half-year-old palomino Quarter Horse, from the Peytons at their Montgomery ranch. The day after the Gambles paid the Peytons for the horse, the group walked to a small movable metal pen located in the pasture behind the barn. While they were standing outside the pen, Larry Peyton mentioned to Rhonda Gamble that he had been battling fire ants all summer and that the ants had been bad that year. He did not mention any particular location on the property or warn Gamble to be careful of ants in the pen. Neither Rhonda nor Jay Gamble observed any visible fire ant mounds inside the pen. Gabe's trainer provided a mounted demonstration of the horse's training, then asked Gamble if she wanted to ride. An experienced rider, Rhonda Gamble mounted the horse and rode around the perimeter of the pen for what Jay Gamble estimated to be ten to fifteen minutes. As Rhonda Gamble removed her right foot from the stirrup to dismount, Gabe began to crow hop. Gamble testified that as she bounced in the saddle, she felt "an explosion of electrical activity from my waist to my toes," lost control of her lower body and fell to the ground. The trainer took the horse to the barn while Jay Gamble and the Peytons tended to Rhonda Gamble. When the trainer returned to the pen, she mentioned that Gabe had fire ants all over his back

legs. Gamble sustained a back injury requiring surgery.

Citing *Steeg v. Baskin Family Camps, Inc.*, 124 S.W.3d 633, 639 (Tex.App.-Austin 2003, pet. dism'd), *Sapone v. Grand Targhee, Inc.*, 308 F.3d 1096, 1103–05 (10th Cir.2002), and *Halpern v. Wheeldon*, 890 P.2d 562, 566 (Wyo.1995), Gamble contends a fact issue exists regarding whether her injuries resulted from an inherent risk of equine activity. *Sapone* and *Halpern* involved construction of Wyoming's Recreation Safety Act. They are readily distinguishable from this case. Both opinions contrasted the fact-specific analysis of duty required under Wyoming's statute from the analysis appropriate for statutes that include a nonexclusive list of inherent risks. *Sapone*, 308 F.3d at 1102; *Halpern*, 890 P.2d at 566. *Halpern* recognized that when a court is presented with a case under a statute with a nonexclusive list of inherent risks, "it may compare the facts of the case to the list of legislatively defined inherent risks and decide, as a matter of law, whether the plaintiff's injury resulted from an inherent risk." *Id.*

■ In Texas, a person cannot be held liable for personal injuries sustained by a participant in an equine activity if the injury results from dangers or conditions that are an inherent risk of the activity. TEX. CIV. PRAC. & REM.CODE ANN. § 87.003 (Vernon 2005). Unlike Wyoming, our legislature has enacted a nonexclusive list of inherent risks of equine activity. *Id.* Included in this list are the propensity for a horse to behave in ways that may result in personal injury to a person on the horse and the unpredictability of a horse's reaction to an unfamiliar animal. TEX. CIV.

name appears on the notice of appeal, Jay Gamble did not file a brief or join in the brief filed by his wife, and the brief does not assert error regarding the non-suited claims. We therefore dismiss the appeal of Jay Gamble

for want of prosecution. *See* TEX.R.APP. P. 38.8.

**2.** We use the plaintiff's married name throughout this opinion.

Prac. & Rem.Code Ann. § 87.003(1), (2) (Vernon 2005). Appellant's reliance on Steeg is misplaced. The injury in *Steeg* occurred as a result of a saddle slipping and there was some evidence supporting the claim that negligent saddling contributed to the injury. *Steeg*, 124 S.W.3d at 638–39. Reasoning that negligent saddling is not an inherent risk of horseback riding, the Austin Court of Appeals held that fact issues precluded summary judgment. *Steeg*, 124 S.W.3d at 638–39. Gamble's injury occurred as a result of the horse's violent reaction to being stung by ants. The injury-causing event here clearly falls within the statutorily defined inherent risks; therefore, the Peytons are not liable for Gamble's injuries unless one of the statutory exceptions of Section 87.004 applies. Tex. Civ. Prac. & Rem.Code Ann. § 87.004 (Vernon 2005).

In Texas, a person is liable for damages arising from personal injury in an equine activity if the injury "was caused by a dangerous latent condition of land for which warning signs, written notices, or verbal warnings were not conspicuously posted or provided to the participant, *and* the land was owned, leased, or otherwise under the control of the person at the time of the injury or death *and* the person knew of the dangerous latent condition." Tex. Civ. Prac. & Rem.Code Ann. § 87.004(3) (Vernon 2005) [3] (emphasis added). Gamble argues a fact issue exists regarding whether a dangerous latent condition of land caused her injury. A bed of ants, she argues, is as much a condition of land as a plant, a man-made object, or a concealed hole. [4] However, a structure built by ants

is not at issue in this case, as it might be if, say, a horse stumbled on a crawfish tower or tripped in a mole hole and threw its rider. In this case, the horse unexpectedly reacted to wild animals. The Peytons argue that the ants themselves cannot be a dangerous latent condition of land because ownership and control of land does not convey ownership and control over wild animals on the land.

The Peytons rely primarily on two cases that pre-date the equine activities statute: *Gowen v. Willenborg*, 366 S.W.2d 695 (Tex.Civ.App.-Houston 1963, writ ref'd n.r.e.), and *Nicholson v. Smith*, 986 S.W.2d 54 (Tex.App.-San Antonio 1999, no pet.). In *Gowen v. Willenborg*, wasps openly nesting on a billboard stung a child trespasser as he climbed the structure. 366 S.W.2d at 696. The appellate court affirmed the defendant's summary judgment. *Id.* at 698. "Generally the law does not require the owner or possessor of land to anticipate the presence of, or guard an invitee against harm from, animals ferae naturae unless such owner or possessor has reduced the animals to possession, harbors such animals, or has introduced onto his premises wild animals not indigenous to the locality." *Id.* at 697. The presence of dangerous insects in or near an artificial structure not in itself unreasonably dangerous does not transform the structure into one involving an unreasonable risk of harm. *Id.* at 698. By analogy, fire ants are normally present in nature and the riding pen is designed neither to protect against nor to control tiny insects; therefore, the presence of fire ants inside an outdoor riding pen is a natural condi-

---

3. The correct wording of the statute is "dangerous latent condition of land" not "dangerous or latent condition of land" as asserted by the appellant.

4. The appellant's examples of conditions of land are provided as part of her argument for

a Section 87.004 exception to the application of Section 87.003. These other conditions appear to fall within the inherent risks mentioned in Section 87.003, and the appellant does not suggest otherwise.

tion. It is not an unreasonably dangerous condition requiring the statutory warnings.

*Nicholson v. Smith,* 986 S.W.2d 54 (Tex. App.-San Antonio 1999, no pet.), examined premises liability for personal injuries caused by wild animals in general and fire ants in particular. A resident of a privately owned RV park died after being stung over 1,000 times by fire ants while working under his house trailer. *Id.* at 57. The appellate court affirmed summary judgment for the landowner. *Id.* at 64. Relying on the precedent established in *Gowen v. Willenborg,* the appellate court reasoned that the resident was attacked by indigenous wild animals in their natural habitat, and the landowners did nothing to attract the fire ants onto their property or to incite aberrant behavior. *Id.* at 62.[5] "A good deal of the vegetation in Texas stings, sticks or stinks. Any number of insects and animals can hurt, or even kill you." *Id.* "Under ordinary circumstances, Texas landowners do not have a duty to warn their guests about the presence and behavior patterns of every species of indigenous wild animals and plants which pose a potential threat to a person's safety, as well as the extent of that threat. If a landowner was required to affirmatively disclose all risks caused by plants, animals, and insects on his or her property, 'the burden on the landowner would be enormous and would border on establishing an absolute liability.' " *Id.* at 63–64 (citing *Brunelle v. Signore,* 215 Cal.App.3d 122, 263 Cal.Rptr. 415, 419–20 (1989)).

Gamble contends the doctrine of *ferae naturae* does not apply when the premises owners know or should know of the animals' existence. She contends that the Peytons' knowledge of the presence of ants in the pen is a fact issue. Most of the cases she relies on, however, do not involve animals in their natural habitat. She cites *CeBuzz, Inc. v. Sniderman,* 171 Colo. 246, 466 P.2d 457, 459 (1970), where a tarantula bit a customer shopping for bananas. An employee had seen an insect crawl out of the bananas two days earlier, and the manager remarked that the last batch of bananas had been full of tarantulas. *Id.* at 250, 466 P.2d 457. The appellate court held the store, knowing the insects might be found in the bananas it was offering for sale, had a duty to take measures to guard against injury when the customers handled the bananas. *Id.* at 459–60. In *Williams v. Milner Hotels Co.,* 130 Conn. 507, 36 A.2d 20 (1944), a long-term hotel patron complained to the manager about rats in the room some time before one bit him while he slept. *Id.* at 20–21. The hotel argued for a standard of care commensurate with the character of the establishment, but the appellate court held the innkeeper had a duty to keep his inn in a reasonably safe condition and whether he acted with ordinary prudence was an issue for the jury. *Id.* at 21–22. In *DeLuce v. Fort Wayne Hotel,* 311 F.2d 853 (6th Cir. 1962), an actress bitten by a foot-long rat in a hotel lobby sued under a statute that required an owner to keep the entire building free of vermin. *Id.* at 855. The hotel employees knew rats entered freely from the alley and took no precautions to prevent it. The appellate court reversed the judgment for the plaintiff and remanded the case for a new trial because wheth-

---

**5.** The fire ant may be native species, *Solenopsis geninata or S. xyloni,* or may be an introduced species, *S. invicta,* a native South American species introduced to the southern United States in the 1930's and present in eastern Texas in incalculable numbers since the 1950's. *See generally,* http://fireant.tamu. edu/antfacts/identification.html. Because the Peytons did not introduce the ants to their property, and Gamble did not raise the possibly non-indigenous character of the fire ant as a ground for avoiding summary judgment, we will follow *Nicholson* and apply the doctrine of *ferae naturae* to fire ants.

er it was reasonably foreseeable that a rat might enter the hotel lobby is a question of fact for the jury. *Id.* at 857. These cases all involve the presence of wild animals within the confines of commercial buildings.

Two of Gamble's cited cases involve animal attacks out-of-doors. In *Carlson v. State*, 598 P.2d 969, 970 (Alaska 1979), plaintiff was mauled by a bear. Potential liability arose not from a responsibility to control the bear, but from the accumulation of garbage that attracted the bear to the highway turnout where it encountered and mauled the plaintiff. *Id.* at 970–71. The decision to not remove litter from the turnout was an operational decision for which the State was not immune. *Id.* at 972. Because the alleged negligence was the creation of a dangerous situation by not removing litter, as opposed to its inherent possession and control of wild animals, the doctrine of *ferae naturae* did not apply. *Id.* at 973. In *Williams v. Gibbs*, 123 Ga.App. 677, 182 S.E.2d 164 (1971), a rattlesnake bit a patron walking on the sidewalk towards the restroom of the combination restaurant and service station. *Id.* at 165. No snakes had been seen on the premises in six years of ownership. The court held the attack was not a foreseeable consequence of allowing the grass along the sidewalk to grow to six inches in height. *Id.* The appellate court noted that the law does not require a landowner to anticipate the presence of and guard against harm by wild animals. None of Gamble's cases stand for the proposition that an owner is responsible for the actions of insects outdoors in a place where the particular animal is normally found.

Gamble argues the accident occurred in an improved horse pen, and fire ants should not be present in such a structure. The pen itself was not involved in the accident, and nothing about the pen made either the horse or the ants more dangerous. Gamble could not reasonably expect that an outdoor structure designed to contain horses would protect the horse from encountering ants. Unlike a building with walls and a floor, the pen presented no barrier to terrestrial insects.

■ Gamble contends the Peytons knew they had a fire ant problem but kept the danger a secret. Her claim is based entirely upon Larry Peyton's conversation, as they stood at the pen before the demonstration commenced, that he had been battling fire ants and they were bad that year. This statement reveals a general awareness of the possible presence of fire ants, but it also demonstrates that he disclosed that possibility to Gamble before she mounted the horse. Gamble contends this warning is inadequate under the equine activity statute and that a fact issue exists as to whether the Peytons posted the statutory warning. See TEX. CIV. PRAC. & REM.CODE ANN. § 87.005 (Vernon 2005). Section 87.005 requires that a warning regarding inherent risks be posted by an "equine professional" if the professional "manages or controls a stable, corral, or arena where the professional conducts an equine activity." *Id.* "Equine professional" is a statutorily defined term that means "a person engaged for compensation: (A) to instruct a participant or rent to a participant an equine animal for the purpose of riding, driving, or being a passenger on the equine animal; or (B) to rent equipment or tack to a participant." TEX. CIV. PRAC. & REM.CODE ANN. § 87.001(5) (Vernon 2005). Gamble bought this horse from the Peytons; she did not rent the horse or any tack, and she received no riding instruction for which she paid compensation. Section 87.005 does not apply. Furthermore, as we have already determined that the presence of fire ants inside an outdoor riding pen is not an unreason-

ably dangerous condition of land, the warning provisions contained in Section 87.004(3) also do not apply. Even for a dangerous latent condition, Section 87.004(3) does not apply if the participant is provided with a verbal warning. See TEX. CIV. PRAC. & REM.CODE ANN. § 87.004(3) (Vernon 2005). Larry Peyton informed Gamble that they had been having problems with ants. Gamble contends the appellees failed to warn her to be careful of fire ants while in their enclosed pen, but Larry Peyton provided Gamble with a verbal warning coextensive with her evidence of his knowledge that ants could be present where she was riding the horse.

## CONCLUSION

The unpredictability of a horse's reaction to another animal is an inherent risk of an equine activity. Therefore, the landowners are not liable for personal injuries sustained by a horseback rider unless the injuries were caused by a dangerous latent condition of land for which warnings were not provided. In this case, the rider's injuries were caused by the horse's reaction to being stung by fire ants. Ants are wild animals neither controlled nor harbored by the landowner, and the landowner provided to the rider a verbal warning of the possible presence of ants on the premises. We hold the trial court did not err in granting the landowners' summary judgment. The judgment is affirmed.

AFFIRMED.