Opinion issued June 28, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-01108-CV






STUART LITTLE, Appellant


V.


SUSAN NEEDHAM, INDIVIDUALLY AND D/B/A/ NEEDHAM STABLES
AND SAM HOUSTON FEED & SUPPLY AND ALAN NEEDHAM,
INDIVIDUALLY AND D/B/A/ SAM HOUSTON FEED & SUPPLY II,
Appellees






On Appeal from the 113th District Court

Harris County, Texas

Trial Court Cause No. 2005-50497A






O P I N I O N

 Appellant, Stuart Little, appeals from the trial court's order that granted
summary judgment in favor of appellees, Susan Needham, individually and d/b/a/
Needham Stables and Sam Houston Feed & Supply and Alan Needham, individually
and d/b/a/ Sam Houston Feed & Supply II (collectively, the "Needhams"). In six
issues, Little argues that the evidence raises a fact issue as to (1) whether his injuries
resulted from dangers or conditions that are an inherent risk of equine activity and,
if not, whether any of the exceptions to immunity for injuries arising out of such 
inherent risks apply or (2) whether his injuries resulted from a premise defect and, if
so, whether the Needhams exercised control over and negligently maintained the
premises.

 We affirm.

Facts and Procedural History

 In January 2004, the Needhams purchased a feed store and horse stables from
J. Raymond Harmon, Jr. This property is located next to an approximately three-acre
parcel of land belonging to Dr. John McBride. During the time Harmon owned the
feed store and the stables, he noticed that the largely swampy McBride property was
not being used for anything, so he asked Dr. McBride if he could use the land for
riding and grazing horses. Dr. McBride consented, and Harmon filled in the land and
erected a fence, which included a gate to his own property. Over time, a circular
track developed on the McBride property on which grass no longer grew.

 On April 14, 2005, Erica Perez invited Little to the Needhams' stables where
she boarded her horse, Moose. Little rode Moose for the first time that day. The
following day, Little returned to the Needhams' stables to ride Moose. While
galloping around the track on the McBride property, Little collided with a tree located
to the side of the track and was injured. Little's sixth amended petition alleged:

 As [Little] was riding around the horse track, the horse he was on started
to veer towards the outer portion of the track and as the horse neared the
outer edge of the track, [Little] violently struck a tree, limb of the tree
or part of the trunk of the tree, which may or may not have protruded
onto the horse track. The force of the impact caused [Little] to fall off
the horse and hit the track below. Furthermore, the track had no outer
railing or other similar device to prevent horses from going near the tree,
tree limb or trunk that bordered the track.


Although Little testified at his deposition that he was in control of Moose "the whole
time," or else he would not have been riding him, and that he could not remember
having any trouble controlling Moose, he did acknowledge that he could tell that
Moose "wasn't fully trained or completely worked . . . because he was a little jumpy,
he was free spirited." Sometime thereafter, Little filed suit against the Needhams,
among others. 

 On May 23, 2006, the Needhams filed a motion for summary judgment. On
June 15, 2006, Little filed his response to the Needhams' motion for summary
judgment, which relied upon and included, as exhibits, excerpts from his own
deposition and the depositions of Susan Needham, Julio Arredondo, one of the
Needhams' employees, Laura Tindall, (1) Harmon, and the affidavits of Michael Sellers,
a private investigator who investigated the Needhams' stables, Jill Cooke, an
experienced equestrian, Perez, and Little. On June 23, 2006, the Needhams' filed a
reply that included objections to the deposition testimony of Laura Tindall and the
affidavits of Sellers, Cooke, Perez, and Little. On June 27, 2006, the trial court
signed an order sustaining each objection. That same day, the trial court granted the
Needhams' motion for summary judgment, ordering that Little take nothing from the
Needhams.

Standard of Review

 Because summary judgment is a question of law, we review a trial court's
summary judgment decision de novo. Bendigo v. City of Houston, 178 S.W.3d 112,
113 (Tex. App.--Houston [1st Dist.] 2005, no pet.). The standard of review for a
traditional summary judgment motion is threefold: (1) the movant must show that
there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, the court must take evidence favorable to the
nonmovant as true; and (3) the court must indulge every reasonable inference in favor
of the nonmovant and resolve any doubts in the nonmovant's favor. Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c). 
A defendant seeking summary judgment must as a matter of law negate at least one
element of each of the plaintiff's theories of recovery or plead and prove each element
of an affirmative defense. Mo. Pac. R.R. v. Lely Dev. Corp., 86 S.W.3d 787, 790
(Tex. App.--Austin 2002, pet. dism'd). If a trial court's order granting summary
judgment does not specify the basis for the court's ruling, as is the case here, the
summary judgment will be affirmed if any of the theories advanced by the movant is
meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

Objection to Use of Summary Judgment Evidence on Appeal

 Before we address the merits of Little's arguments, we must first address the
effect of the trial court's June 27, 2006 order sustaining the Needhams' objection to
much of Little's summary judgment evidence. In their reply to Little's response to
their motion for summary judgment, the Needhams objected to the deposition
testimony of Tindall and the affidavits of Sellers, Cooke, Perez, and Little. The trial
court sustained these objections. On appeal, Little refers to this evidence, but does
not attack the merits of the trial court's ruling. Accordingly, we may not consider the
deposition testimony of Tindall and the affidavits of Sellers, Cooke, Perez, and Little
in reviewing the trial court's summary judgment. See Inglish v. Prudential Ins. Co.
of America, 928 S.W.2d 702, 706 (Tex. App.--Houston [1st Dist.] 1996, writ denied).



Whether Injury Resulted From Dangers or 

Conditions That Are an Inherent Risk of Equine Activity


 In his first and second issues, Little argues that the evidence raises a fact issue
as to whether his injuries resulted from dangers or conditions that are an inherent risk
of equine activity. More specifically, Little contends that the evidence shows that his
injuries were not caused by the "inherent possibility of falling down while horse back
riding," but rather by the track's design, in that the tree was not removed and a fence
was not erected. 

 Under the Texas Civil Practice and Remedies Code, no person, including an
equine activity sponsor (2) or equine professional, (3) is liable for damages arising from
the personal injury or death of a participant (4) in an equine activity (5) if the injury or
death results from dangers or conditions that are an inherent risk of equine activity,
including (1) the propensity of an equine to behave in ways that may result in
personal injury or death to a person on or around it; (2) the unpredictability of an
equine's reaction to sound, a sudden movement, or an unfamiliar object, person, or
other animal; (3) certain land conditions and hazards, including surface and
subsurface conditions; (4) a collision with another animal or an object; or (5) the
potential of a participant to act in a negligent manner that may contribute to injury to
the participant or another, including failing to maintain control over the equine or not
acting within the participant's ability. Tex. Civ. Prac. & Rem. Code Ann. § 87.003
(Vernon 2005). When a court is presented with a case under a statute with a non-exclusive list of inherent risks, as we are here, "it may compare the facts of the case
to the list of legislatively defined risks and decide, as a matter of law, whether the
plaintiff's injury resulted from an inherent risk." Gamble v. Peyton, 182 S.W.3d 1,
2 (Tex. App.--Beaumont 2005, no pet.) (quoting Halpern v. Wheeldon, 890 P.2d 562,
566 (Wyo. 1995)). 

 Here, Little was injured when Moose, a jumpy and free-spirited horse that was
not fully trained, veered off the track, causing Little to collide with a tree. Under
section 87.003, both the propensity of an equine to behave in ways that may result in
injury or death and a collision with an object are statutorily defined dangers or
conditions that are an inherent risk of an equine activity. Tex. Civ. Prac. & Rem.
Code Ann. § 87.003 (1), (4). We conclude, therefore, that the facts alleged by Little
fall squarely within the statutorily defined dangers or conditions that are an inherent
risk of equine activity under section 87.003. See id.; see also Jorst v. D'Ambrosio
Bros., No. C 00-03646 CRB, 2001 WL 969039, at *8 (N.D. Cal. Aug. 13, 2001) (not
designated for publication) ("Ordinarily, where the object with which a rider collides
is a foreseeable part of riding--a tree branch or a fence post when a rider is outside
or a jump, wall, or stall door when riding inside--the risk that a rider would brush
against some object and fall is inherent in the activity."). Therefore, the evidence
does not raise a fact issue as to whether his injuries resulted from dangers or
conditions that are an inherent risk of equine activity. 

 Little contends, however, that Steeg v. Baskin Family Camps, Inc., 124 S.W.3d
633 (Tex. App.--Austin 2003, no pet.), supports his claim that his injuries were not
caused by an inherent risk of equine activity. In that case, Steeg sued Baskin for
injuries he sustained on a trail ride when his saddle slipped 90 degrees and he fell off
the horse he was riding. Id. at 635. The trial court granted Baskin's motion for
summary judgment, concluding that a slipping saddle is an inherent risk of equine
activity. Id. at 635-36. The Austin Court of Appeals reversed the trial court's
decision. It concluded that the trial court had erred by concluding that, as a matter of
law, all slipping saddles are an inherent risk of equine activity because, although "[a]
saddle may slip for many reasons, several of which arise from inherent risks of equine
activity--horses sweat, saddles stretch, saddle pads compress, riders sit off-center--
. . . a saddle may slip for reasons that are not inherent risks, such as negligent
cinching." Id. at 638. Thus, because some evidence in the record supported a finding
that Steeg's injuries arose from an inherent risk while other evidence supported a
finding that his injuries arose from the negligent acts or omissions of the appellee, the
court held that a genuine issue of material fact existed and summary judgment was
improper. Id. at 639-41.

 Little's reliance on Steeg with respect to his first and second issues is
misplaced. The Steeg court concluded that a slipping saddle is not, as a matter of law,
an inherent risk of equine activity. Id. at 638. Nor does a slipping saddle come
within any of the statutorily defined dangers or conditions that are an inherent risk of
equine activity. See Tex. Civ. Prac. & Rem. Code Ann. § 87.003. Therefore, Steeg
does not support Little's contention that his injuries were not caused by dangers or
conditions that are an inherent risk of equine activity. Steeg's actual applicability is
to Little's fifth and sixth issues, which concern whether an exception to the immunity
provided by the equine statute applies.

 We overrule Little's first and second issues.

Whether An Exception to Immunity Applies

 In his fifth and sixth issues, Little argues that the evidence raises a fact issue
as to whether three of the statutorily defined exceptions to immunity apply.

 Even if a participant's injury or death resulted from dangers or conditions that
are an inherent risk of equine activity, a person is liable for damages arising from a
participant's injury or death (1) if the injury or death was caused by (a) faulty
equipment or tack used in the equine activity, the person provided the equipment or
tack, and the person knew or should have known that the equipment or tack was
faulty or (b) a dangerous latent condition of land for which warning signs, written
notices, or verbal warnings were not conspicuously posted or provided to the
participant, and the land was owned, leased, or otherwise under the control of the
person at the time of the injury or death, and the person knew of the dangerous latent
condition or (2) the person committed an act or omission with willful or wanton
disregard for the safety of the participant and that act or omission caused the injury. 
Id. § 87.004(1), (3), (4) (Vernon 2005).

 Faulty Equipment

 Little contends that the evidence raises a fact issue regarding whether his
injuries were caused by faulty equipment because the gate giving access to the track
should have been closed. Assuming without deciding that the gate qualifies as
equipment under section 87.004(1), Little's argument is waived. Little never alleged
in his pleadings or response to the Needhams' motion that his injuries were caused
by faulty equipment that was owned by the Needhams and that the Needhams knew
or should have known was faulty. See Tex. R. Civ. P. 166a(c) ("Issues not expressly
presented to the trial court by written motion, answer or other response shall not be
considered on appeal as grounds for reversal [of a summary judgment]."); Reyes v.
Storage & Processors, Inc., 86 S.W.3d 344, 348 (Tex. App.--Texarkana 2002)
(holding that because appellant did not raise particular issue in response to motion for
summary judgment, he may not raise it on appeal), aff'd, 134 S.W.3d 190 (Tex.
2004). Even if he had raised the issue of faulty equipment, Little presented no
evidence that the gate was faulty in any way or that it in any way contributed to his
injuries. We conclude, therefore, that the evidence does not raise a fact issue
regarding whether the exception for faulty equipment applies. 

 Dangerous Latent Condition of Land

 Little also argues that evidence that the track was dangerously designed and
maintained in that "the tree that caused the injury [was] precariously close to the lane
without a fence where the horses and riders were sure to pass as they ran by" raises
a fact question regarding whether his injuries were caused by a dangerous latent
condition of land.

 According to Black's Law Dictionary, "latent" means "concealed." Black's
Law Dictionary 898 (8th ed. 2004). Here, Little points to no evidence that the tree
was concealed. In fact, in his response to the Needhams' motion for summary
judgment, Little admitted that the tree was "noticeable in general." We conclude,
therefore, that the evidence does not raise a fact issue regarding whether the
exception for a dangerous latent condition of land applies.

 Act or Omission Committed with Willful and Wanton Disregard for Safety

 Finally, Little contends that the evidence raises a fact issue regarding whether
he was injured because the Needhams committed an act or omission with willful or
wanton disregard for his safety. In support of this argument, Little points out that the
Needhams failed to (1) obtain any training or education or speak to any professionals
regarding the operation and maintenance of the horse facility, despite never having
owned a horse facility before, or (2) conduct a safety assessment. He further argues
that this conclusion is supported by Johnson v. Smith, 88 S.W.3d 729 (Tex.
App.--Corpus Christi 2002, no pet.). In that case, Johnson sued Smith for injuries
he sustained when a stallion owned by Smith bit Johnson's face as he was leading the
stallion back to his paddock after breeding him. Id. at 730. The trial court granted
summary judgment in favor of Smith. Id. The Corpus Christi Court of Appeals
reversed the trial court's decision, holding that the evidence was sufficient to raise a
fact issue regarding whether Smith's failure to warn Johnson about the stallion "rose
to the level of wilful and wanton disregard for Johnson's safety." Id. at 733. In
rendering its decision, the court cited evidence that Smith kept the stallion isolated;
that Smith's other workers were afraid of the stallion; that the stallion was extremely
and increasingly aggressive; that the stallion would lunge at people when they went
near him; and that, as a result, the horse was not handled much. Id.

 "Willful and wanton disregard" means "that entire want of care which would
raise the belief that the act or omission complained of was the result of a conscious
indifference to the right or welfare of the person or persons to be affected by it." 
Wheeler v. Yettie Kersting Mem'l Hosp., 866 S.W.2d 32, 50 n.25 (Tex.
App.--Houston [1st Dist.] 1993, no pet.) (quoting Burk Royalty Co. v. Walls, 616
S.W.2d 911, 916-20 (Tex. 1981)). It is synonymous with "gross negligence." Id.
(citing Burk, 616 S.W.2d at 920). Unlike in Johnson, where evidence regarding the
temperament and past actions of the stallion and Smith's response thereto was
evidence of such disregard, the instant case is devoid of any such evidence. Little
produced no evidence that anyone had previously collided with or complained about
the location of the tree; nor did he produce any evidence that the track, including its
proximity to the tree and the lack of a fence, was negligently designed or maintained. 
We conclude, therefore, that Little failed to raise a fact issue regarding whether he
was injured because the Needhams committed an act or omission with willful or
wanton disregard for his safety.

 We overrule Little's fifth and sixth issues. (6)



Conclusion

 We affirm the trial court's order granting summary judgment in favor of the
Needhams.

 


 Evelyn V. Keyes

 Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.

Publish. Tex. R. App. P. 47.2(b).
1. The record does not show how Tindall is related to the litigation. 
2. "Equine activity sponsor" is defined as "a person or group who sponsors, organizes, or
provides facilities for an equine activity, including equine facilities for a pony club, 4-H club,
hunt club, riding club, therapeutic riding program, or high school or college class, program,
or activity, without regard to whether the person operates for profit" or "an operator of,
instructor at, or promoter for equine facilities, including a stable, clubhouse, pony ride string,
fair, or arena at which an equine activity is held." Tex. Civ. Prac. & Rem. Code Ann.
§ 87.001(4) (Vernon 2005).
3. "Equine professional" is defined as a person engaged for compensation "to instruct a
participant or rent to a participant an equine animal for the purpose of riding, driving, or
being a passenger on the equine animal" or "to rent equipment or tack to a participant." Id.
§ 87.001(5) (Vernon 2005).
4. "Participant" is defined as "a person who engages in [equine] activity, without regard to
whether the person is an amateur or professional or whether the person pays for the activity
or participates in the activity for free." Id. § 87.001(9)(A) (Vernon 2005).
5. The definition of "equine activity" includes (1) equine training or teaching activities;
(2) boarding equine animals; and (3) riding, inspecting, or evaluating an equine animal
belonging to another. Id. § 87.001(3)(B)-(D) (Vernon 2005).
6. Because we have determined that Little's injuries resulted from dangers or conditions that
are an inherent risk of equine activity and that no exception applies
, we need not address his
alternative argument that his injuries resulted from a premise defect. See Tex. R. App. P.
47.1.