

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-25-00016-CV

---

DANICA WILDE, APPELLANT

V.

SAN ANGELO STOCK SHOW & RODEO ASSOCIATION, INC., APPELLEE

---

On Appeal from the 51st District Court
Tom Green County, Texas
Trial Court No. A240302C, Honorable Carmen Dusek, Presiding

---

December 16, 2025

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Danica Wilde, appeals from the trial court's dismissal of her negligence claim under Texas Rule of Civil Procedure 91a. Appellee, San Angelo Stock Show & Rodeo Association, Inc., contends the Farm Animal Activities Act bars the suit.[1] Because Wilde's pleadings establish that her injuries resulted from inherent risks of match horse racing and fail to allege facts invoking a statutory exception, we affirm.

---

[1] TEX. CIV. PRAC. & REM. CODE § 87.003.

BACKGROUND

The San Angelo Stock Show & Rodeo Association sponsors an annual October event called The San Angelo Cinch Roping Fiesta. In 2023, the program added match horse races for the first time. These races are short straight sprints between two horses. The races were held in a fully enclosed roping arena, with a fence extending beyond the finish line.

According to Wilde's petition, after crossing the finish line, riders were forced to veer left to slow their horses and avoid the fence. During one race, Wilde raced in the right-hand lane. After crossing the finish line, she was blocked from turning left by the other competitor's horse. To avoid colliding with that horse or riding straight into the fence, Wilde cut behind her competitor. As she approached the border fence, she pulled back on the reins to slow her horse. The horse decelerated abruptly, throwing Wilde from the saddle and into the fence. She sustained injuries.

Wilde sued the Association under a premises defect theory of negligence, alleging the Association created a dangerous condition by placing the fence too close to the finish line without providing adequate room to stop or turn. The Association moved to dismiss under Rule 91a, arguing the Act barred Wilde's claim. The trial court granted the Association's motion.

## ANALYSIS

Rule 91a authorizes dismissal when a cause of action "has no basis in law or fact." *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 628 (Tex. 2021). A cause of action has no basis in law if the allegations, taken as true with reasonable inferences, do not

entitle the claimant to relief. *Id.* It has no basis in fact if no reasonable person could believe the facts pleaded. *Id.* We review de novo, examining only the pleadings without considering evidence. *Id.*

The Farm Animal Activities Act limits liability for injuries to participants in farm animal activities when the injury results from the dangers or conditions that are "an inherent risk of" a farm animal activity. TEX. CIV. PRAC. & REM. CODE § 87.003. The statute lists nonexclusive examples of inherent risks:

> (1) "the propensity of a farm animal or livestock animal to behave in ways that may result in personal injury or death" to individuals on, near, or handling the animal;
>
> (2) "the unpredictability of a farm animal's or livestock animal's reaction to sound, a sudden movement, or an unfamiliar object . . .;"
>
> (3) "with respect to farm animal activities involving equine animals, certain land conditions and hazards, including surface and subsurface conditions;"
>
> (4) "a collision with another animal or an object;" or
>
> (5) the potential of a participant to act negligently, contributing to an injury.

§ 87.003(1)–(5).

The Act creates limited exceptions to this immunity. A person may be liable despite the Act if the person: provided faulty equipment knowing it was faulty, failed to determine a participant's ability to engage safely in the activity, failed to warn of a dangerous latent condition of land, or "committed an act or omission with wilful or wanton disregard for the safety of the participant and that act or omission caused the injury," among other specified circumstances. § 87.004(1)–(6).

The Association does not argue that Wilde pleaded inadequate facts supporting a traditional premises liability claim. The Association argues only that the Farm Animal Activities Act bars the claim as a matter of law. We therefore examine whether Wilde's pleadings overcome the Act's immunity.

A.  Evolution of "Inherent Risk" from *Animal*-Centric to *Activity*-Centric

The Legislature did not define "inherent risk" of a farm animal activity, leaving courts to navigate this terrain through the statute's nonexclusive examples and evolving case law. It requires following the jurisprudential trail from early interpretations through a significant doctrinal shift.

Initially, Texas courts took a narrow view, treating "inherent risks" as dangers flowing primarily from the animals themselves. Two early appellate decisions illustrate this approach. In *Gamble v. Peyton*, a horse's "crow hop" reaction to fire-ant stings was "clearly" an inherent risk of equine activity. 182 S.W.3d 1, 5 (Tex. App.—Beaumont 2005, pet. denied). Similarly, in *Johnson v. Smith*, a thoroughbred stallion's bite while being returned to its paddock fell within the Act's protection. 88 S.W.3d 729, 733 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). This animal-centric interpretation aligned with the statute's examples of farm animals' "propensit[ies]" and "unpredictability." TEX. CIV. PRAC. & REM. CODE § 87.003 (1, 2).

Within this backdrop, the Third Court of Appeals attempted to draw a bright line between animal behaviors and human choices in *Steeg v. Baskin Family Camps, Inc.*, 124 S.W.3d 633, 639 (Tex. App.—Austin 2003, pet. dism'd). A corporate retreat participant was injured when his saddle slipped ninety degrees, causing him to fall. *Id.* at

4

635. Evidence showed the guide had been hired as a food server, placed the plaintiff on a horse typically used for children, equipped it with an Australian saddle, and allegedly allowed horses to run from the group. *Id.* at 634. The court of appeals distinguished between factors "beyond [sponsors'] control" and those "essentially within the sponsors' control." *Id.* at 637. Finding genuine fact issues about whether negligent cinching caused the saddle to slip, the court reversed the summary judgment. *Id.* at 639.[2] This framework essentially carves out sponsor negligence from the Act's protections.

The Supreme Court of Texas reoriented the doctrine to the statutory text in *Loftin v. Lee*, 341 S.W.3d 352 (Tex. 2011). A trail rider was injured when her horse, already struggling in muddy conditions, spooked after a vine brushed its flank. *Id.* at 354–55. The rider argued the guide's choice of a muddy trail constituted negligence outside the Act's immunity. *Id.* at 356. A splintered intermediate court found that fact issues removed the case from statutory protection. *Lee v. Loftin*, 277 S.W.3d 519, 530–31 (Tex. App.—Tyler 2009), *rev'd*, 341 S.W.3d 352 (Tex. 2011) (finding "conflicting inferences regarding the normalcy of alleged risks present on the selected trail" and whether an exception applied).

The Supreme Court reversed, identifying two fundamental errors in the lower court's analysis.

First, the court clarified the scope of "equine activity" itself. Pointing out that the statute encompasses not merely the activity of equine animals, but more broadly any activity involving them. This distinction was critical because the text protects against risks

---

[2] The court also found a material fact question regarding whether the running horse was due to "innate horse behavior or goading by participants" versus defendant breaching a common-law duty to protect participants. *Id.*

flowing from the organizing and conduct of activities involving horses, not merely risks from animal behavior itself. *Id.* at 358. As the court explained, limiting protection only to unavoidable animal behavior "would have been pointless for the Legislature" because common law already addressed such risks.[3] The text is not limited to unavoidable outcomes or the consequences of animal behavior but may also encompass negligence in the organizing and conduct of the activity. *Id.* at 358.

Second, the court rejected any requirement that protected risks be "inevitably" or "unavoidably" associated with equine activity. *Id.* The court held it irrelevant whether riders could have chosen a less boggy trail; the risk of falling exists when "riding any trail" for any number of reasons. *Id.* Instead, courts must determine inherent risks "based on a common-sense understanding of the nature of equine activities." *Id.*

To illustrate this framework, the court offered a clarifying example:

For example, had Loftin accidentally driven a vehicle into Lee while she was waiting by the stables to embark on the trail ride, Loftin's liability would not be limited by section 87.003. The accident would have been wholly unrelated to any equine activity. On the other hand, had Lee been struck by a horse trailer while unloading the horse she was to ride on the trail, her injury would have resulted from a risk inherent in equine activity because the two were directly related.

---

[3] Specifically, the court held:

The Act simply cannot be fairly read to limit inherent risks to those which are unavoidably associated with equine behavior. Construed so narrowly, the Act would accomplish nothing. The common law does not impose liability on a person for injury caused by a domestic animal, like those covered by the Act, unless the animal was abnormally dangerous and the person had reason to know it, or the person was negligent in handling the animal. It would have been pointless for the Legislature to limit liability when none existed. We must presume that the Legislature intended more.

*Id.* at 358 (internal citations omitted).

*Id.*

B. Wilde's Injuries were Caused By Inherent Risks in a Farm Animal Activity

In the present case, Wilde does not contest that she was engaged in a farm animal activity when she was competing in the indoor match horse race. *See* TEX. CIV. PRAC. & REM. CODE § 87.001 (3)(A) (defining "farm animal activity" to include, *inter alia*, "a farm animal . . . competition, performance, rodeo, event, or parade that involves any farm animal."). "Farm animals" include horses. *See* § 87.001(2-b) (A). Therefore, consistent with *Loftin*, the question is not "could Wilde's injuries have been prevented through different choices?" but rather "is this condition directly related to the equine activity Wilde chose to undertake?" We answer that question, "Yes."

Under *Loftin's* framework, we look to the "general character" of the risk. 341 S.W.3d at 356. Assessing the plain language of her pleading, as Wilde approached that border fence, her horse decelerated abruptly, throwing her from the saddle to the fence. Her injury involved the propensity of horses to behave in ways that can unseat riders; including the unpredictability of a horse's reaction to nearby objects. These fit within § 87.003's nonexclusive examples.

Additionally, the confined arena with horses sprinting at high speeds toward physical boundaries is inherent when match racing in an enclosed space. The fence here was not coincidentally present during Wilde's race. It defined the arena where the race occurred. One cannot have an "enclosed" arena without enclosures. Just as trailers are integral to trail riding in *Loftin*, fences and other barriers are a part of activities, including racing, when they occur in enclosed arenas.

7

Focusing on the five non-exclusive factors listed in § 87.003, Wilde argues her injury was the "consequence of the layout of the race course and would have been non-factors had the track provided a normal stopping pathway." She argues that this does not "involve[] any propensities or the unpredictability of either of the horses in the race," and that the fence was not a "land condition" or hazard. But, per *Loftin*, asking whether different fence placement would have prevented her injury misplaces the focus under the statute. Under the plain language of § 87.003, our role is to examine whether the fence and arena configuration are directly related to match racing in an enclosed arena. Common sense answers yes.

The First Court of Appeals' decision in *Little v. Needham* demonstrates the proper application of the statute. 236 S.W.3d 328 (Tex. App.—Houston [1st Dist.] 2007, no pet.). There, a rider was injured when his horse veered off a track and struck a tree. Similar to what Wilde argues here, the injured rider argued the defendant should have removed the barrier or fenced the track more extensively. The court rejected these arguments, holding that both the horse's behavior and the collision with the tree fell within the Act's inherent risks. *Id.* at 332. The court did not evaluate whether the track's design was optimal. It recognized that horses veer unpredictably and that collisions with objects near riding areas represent inherent risks.

C.  Wilde Does Not Plead Facts Invoking a Statutory Exception

Because the Act applies, Wilde must plead facts invoking a statutory exception to avoid dismissal. Although her petition does not allege gross negligence, her appellate brief argues the Association's fence placement constituted "willful or wanton disregard for

8

the safety of the participant" under § 87.004(4). We examine whether her pleadings support this theory.

Texas courts equate "willful or wanton disregard" with "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." *Little*, 236 S.W.3d at 334 (citations omitted). This standard requires *actual* subjective awareness of an extreme risk coupled with deliberate disregard. *Tarrant Cnty. v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019); *see also In re Oncor Elec. Delivery Co. LLC*, 716 S.W.3d 525, 532 (Tex. 2025) ("the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others").[4] Mere negligence, even if unreasonable, does not suffice.

Wilde's petition alleges this was the Association's first occasion to hold match races in an indoor facility. Although she uses the phrase "actual knowledge," the remainder of her pleading avers general negligence terms, such as the allegation the Association is liable because it permitted the race to be set up on its premises. She argues on appeal that the danger "should have been readily apparent" to the Association. But what "should have been apparent" speaks to objective reasonableness, not subjective awareness. Her pleadings allege no prior incidents, no warnings ignored, no complaints dismissed, and no other facts establishing the Association's subjective awareness of extreme danger. This is insufficient for § 87.004(4)'s exception.

---

[4] Wilde's brief misstates the test as being satisfied in the alternative: "'conscious indifference' *or* 'subjective awareness of an extreme risk.'" (emphasis added).

9

## CONCLUSION

We overrule Wilde's sole issue and affirm the trial court's judgment.


Lawrence M. Doss
Justice