Terri LOFTIN, Petitioner,

v.

Janice LEE and Bob Lee, Respondents.

No. 09–0313.

Supreme Court of Texas.

Argued Jan. 21, 2010.

Decided April 29, 2011.

**354**

Robert T. Cain Jr., Joseph McElroy, Zeleskey Law Firm PLLC, Lufkin, for Terri Loftin.

Douglas J. McCarver, Nacogdoches, for Janice Lee.

Alison M. Rowe, Alison Rowe Equine Legal Services, PC., Bryan, for Amicus Curiae Texas Quarter Horse Association.

Andy McSwain, Fulbright Winniford, P.C., Waco, for Amicus Curiae Texas Farm Bureau.

Justice HECHT delivered the opinion of the Court.

The Texas Equine Activity Limitation of Liability Act[1] limits liability for inherent risks of equine activity. This case raises two issues regarding the proper construction of the Act. One is whether risks are inherent in equine activity only if they relate to animal behavior or are otherwise unavoidable. As we read the Act, an inherent risk is one that, in its general character, is associated with activities involving equine animals. The other issue is whether the Act limits liability for failing to fully assess a person's ability to participate in equine activity if that failure did not cause injury. We hold it does. We reverse the court of appeals' judgment[2] and render judgment for petitioner.

**I**

Janice Lee decided to go horseback riding with her friend, Terri Loftin, at Loftin's East Texas home. Lee had raised horses for years but had not ridden much and wanted to start. Loftin owned and trained horses. Loftin paired Lee with a twelve-year-old gelding named "Smash" that Loftin had bought for her daughter to ride in competitive barrel racing. To Lee, the horse seemed calm, gentle, and not at all dangerous.

Loftin chose a trail across her neighbor's property that she had ridden the week before, and she and Lee set out. About an hour later, they came to a wooded, boggy area. Loftin knew the low-lying area could be muddy, and Lee, who was in the lead, saw that it was. Neither thought to avoid it. Lee had also noticed vines hanging from the trees and knew that a horse might jump if something touches its

---

**1.** Tex. Civ. Prac. & Rem.Code §§ 87.001–.005. All references to the Act are to these provisions. All but five states—California, Maryland, Nevada, New York, and Pennsylvania—limit liability for equine activities by statute.

**2.** 277 S.W.3d 519 (Tex.App.-Tyler 2009).

flank. That is what happened. A vine touched the flank of Lee's horse, and already spooked by the mud, the horse bolted, as horses will. Lee fell, fracturing a vertebra.

Lee and her husband sued Loftin. The trial court granted summary judgment for Loftin, holding that the Act barred Lee's claims. The court of appeals reversed and remanded, concluding that material fact issues subsisted. We granted Loftin's petition for review.[3]

## II

The Act is a comprehensive limitation of liability for equine activity of all kinds.[4] It covers "riding, handling, training, driving, assisting in the medical treatment of, being a passenger on, or assisting a participant or sponsor with"[5] "a horse, pony, mule,

donkey, or hinny."[6] It applies to all participants.[7] Section 87.003 of the Act states in pertinent part:

> Except as provided by Section 87.004, any person ... is not liable for ... damages [for personal injury that] results from the dangers or conditions that are an inherent risk of an equine activity, including:
> (1) the propensity of an equine animal to behave in ways that may result in personal injury or death to a person on or around it;
> (2) the unpredictability of an equine animal's reaction to sound, a sudden movement, or an unfamiliar object, person, or other animal;
> (3) certain land conditions and hazards, including surface and subsurface conditions;

3. 53 Tex.Sup.Ct.J. 15 (Oct. 23, 2009).

4. TEX. CIV. PRAC. & REM.CODE § 87.001(3) (" 'Equine activity' means: (A) an equine animal show, fair, competition, performance, or parade that involves any breed of equine animal and any equine discipline, including dressage, hunter and jumper horse shows, grand prix jumping, three-day events, combined training, driving, pulling, cutting, polo, steeplechasing, English and Western performance riding, endurance trail riding and Western games, and hunting; (B) equine training or teaching activities; (C) boarding equine animals; (D) riding, inspecting, or evaluating an equine animal belonging to another, without regard to whether the owner receives monetary consideration or other thing of value for the use of the equine animal or permits a prospective purchaser of the equine animal to ride, inspect, or evaluate the equine animal; (E) informal equine activity, including a ride, trip, or hunt that is sponsored by an equine activity sponsor; (F) placing or replacing horseshoes on an equine animal; or (G) without regard to whether the participants are compensated, rodeos and single event competitions, including team roping, calf roping, and single steer roping."). In 2001, the Legislature amended sections 87.001–.005 to add provisions for livestock shows. Act of May · 22, 2001, 77th Leg., R.S., ch. 1108, 2003 Tex.

Gen. Laws 2457. For simplicity, we have omitted references to these livestock provisions in this opinion.

5. TEX. CIV. PRAC. & REM.CODE § 87.001(1) (" 'Engages in an equine activity' means riding, handling, training, driving, assisting in the medical treatment of, being a passenger on, or assisting a participant or sponsor with an equine animal. The term includes management of a show involving equine animals. The term does not include being a spectator at an equine activity unless the spectator is in an unauthorized area and in immediate proximity to the equine activity.");

6. *Id.* § 87.001(2) (" 'Equine animal' means a horse, pony, mule, donkey, or hinny.").

7. *Id.* § 87.001(9) (" 'Participant' means: (A) with respect to an equine activity, a person who engages in the activity, without regard to whether the person is an amateur or professional or whether the person pays for the activity or participates in the activity for free; and (B) with respect to a livestock show, a person who registers for and is allowed by a livestock show sponsor to compete in a livestock show by showing an animal on a competitive basis, or a person who assists that person.").

(4) a collision with another animal or an object; or

(5) the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another, including failing to maintain control over the equine animal or not acting within the participant's ability.[8]

Section 87.004, entitled "Exceptions to Limitation on Liability", states in part:

A person ... is liable for ... damage ... caused by a participant in an equine activity if:

(1) the injury or death was caused by faulty equipment or tack used in the equine activity, the person provided the equipment or tack, and the person knew or should have known that the equipment or tack was faulty;

(2) the person provided the equine animal and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the equine activity and determine the ability of the participant to safely manage the equine animal, taking into account the participant's representations of ability;

(3) the injury or death was caused by a dangerous latent condition of land for which warning signs, written notices, or verbal warnings were not conspicuously posted or provided to the participant, and the land was owned, leased, or otherwise under the control of the person at the time of the injury or death and the person knew of the dangerous latent condition;

(4) the person committed an act or omission with wilful or wanton disregard for the safety of the participant and that act or omission caused the injury; or

(5) the person intentionally caused the injury or death.[9]

The statutory text reflects an expansive view of "inherent risk". The five examples in section 87.003 cover a broad range—animal propensities and unpredictability, land conditions, collisions, and other participants' negligence—yet are expressly non-exclusive. And by excepting five other kinds of risks, section 87.004 necessarily implies that they might otherwise be deemed inherent in equine activity. Three obviously are—faulty equipment, a faulty assessment of a participant's abilities, and latent land conditions. But the other two—wanton disregard for safety and intentional conduct—might seem extraneous rather than inherent risks. Read together, sections 87.003 and 87.004 reflect the Act's intention to address the entire scope of equine activity.

Lee was injured while engaged in such activity—"riding ... an equine animal belonging to another".[10] But she contends that her accident was caused by Loftin's negligence in choosing a trail to ride, one with mud and vines. Bad trails and "sponsor negligence", she argues, are avoidable and thus not inherent risks of equine activity. Lee also contends that for failing to make a reasonable and prudent effort to determine her ability to ride, Loftin can be liable under section 87.004(2).[11] Loftin

8. *Id.* § 87.003 (livestock provisions omitted).

9. *Id.* § 87.004 (livestock provisions omitted).

10. Tex. Civ. Prac. & Rem.Code § 87.001(3)(D).

11. In the trial court and court of appeals, Lee argued that her injury was caused by latent, dangerous, unmarked conditions of land for which liability is permitted by section

87.004(3). She does not make that argument in this Court, perhaps because it is clear that the mud and vines were not latent. Indeed, Lee saw them herself before the injury.

Here, Lee also argues that the Act violates the open courts and due course of law guarantees of article I, section 13 of the Texas Constitution, and that the Act is unconstitutionally vague. But Lee did not raise these

contends that the Act bars Lee's claims as a matter of law.

The justices of the court of appeals were of three minds. The chief justice determined after a lengthy analysis that the vines and the horse's propensity to react to them were risks but were not inherent in trail riding under section 87.003 if they could have been avoided, as by choosing a different trail.[12] He also concluded that Loftin may not have fully determined Lee's ability to go trail riding and was therefore excepted from the limitation on liability by section 87.004(2).[13] One justice agreed on this latter point but would have held on the other one that Lee's injury was caused by inherent risks of equine activity.[14] The other justice disagreed with the chief justice on both points.[15] Thus, a majority of the court agreed to reverse Loftin's summary judgment because material fact issues remained under section 87.004(2) but not section 87.003.

We discuss first the arguments under section 87.003, then those under section 87.004(2).

### III

■ Lee argues that by "inherent risk of equine activity", the Act refers only to risks due to innate animal behavior and not those involved in the activity. She acknowledges that a horse may become skittish in mud or when its flank is touched, and that such behavior is an inherent risk of horseback riding. But she insists that her injury resulted, not from her horse's propensities, but from having been put in a place where those propensities could cause harm. Loftin was to blame, Lee argues, not the horse. A negligent sponsor is not an inherent risk of horseback riding. Nor are mud and vines inherent risks of trail riding; there are trails free of such conditions. Thus, she urges, the Act does not apply. She relies in part on *Steeg v. Baskin Family Camps, Inc.*, in which the court of appeals held that "[t]he Act denies immunity from liability for factors essentially within the sponsors' control".[16] In effect, Lee reads "equine activity" to mean only the activity *of* equine animals, not activity *involving* equine animals. The first two examples of inherent risk listed in section 87.003 are animal propensities and behavior.[17] But the remainder of the text contradicts Lee's position. Two other examples of inherent risk have nothing to do with animal behavior: land conditions and negligent participants. Lee's complaint against Loftin fits squarely under section 87.003(5): "the potential of a participant to act in a negligent manner that may contribute to injury to the participant or another". This provision alone refutes the argument that sponsor negligence is not an inherent risk of equine activity. We disapprove the contrary statement in *Steeg*.

issues in the trial court, and therefore she cannot argue them here. *See, e.g., Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (requiring an appellant to raise an open courts challenge at the trial court); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex.1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal.").

12. 277 S.W.3d 519, 528–531 (Tex.App.-Tyler 2009) (Worthen, C.J.). The chief justice expressly did not consider whether the bog was a risk. *Id.* at 528 n. 6 (Worthen, C.J.).

13. *Id.* at 531–532.

14. *Id.* at 533–535 (Hoyle, J., concurring).

15. *Id.* 535–540 (Griffith, J., dissenting).

16. 124 S.W.3d 633, 637 (Tex.App.-Austin 2003, pet. dism'd).

17. Tex Civ. Prac. & Rem.Code § 87.003(1)–(2).

358

■ Consistent with section 87.003, section 87.004's exceptions to immunity imply that the risks covered by the Act are those inherent in activities involving equine animals: knowingly supplying faulty equipment, failing to determine a participant's ability, failing to warn of latent land conditions, wilfully or wantonly disregarding safety, and intentionally causing injury.[18] The structure of the Act shows that but for section 87.004, these risks would also be considered inherent in equine activity.

The Act simply cannot be fairly read to limit inherent risks to those which are unavoidably associated with equine behavior. Construed so narrowly, the Act would accomplish nothing. The common law does not impose liability on a person for injury caused by a domestic animal, like those covered by the Act, unless the animal was abnormally dangerous and the person had reason to know it, or the person was negligent in handling the animal.[19] It would have been pointless for the Legislature to limit liability when none existed. We must presume that the Legislature intended more.[20]

Nor must risks associated with equine activity be inevitable to be inherent. Lee and Loftin could have avoided boggy, wooded trails; they could have gone riding in West Texas. Perhaps Loftin could have chosen a nearby trail free of the conditions that caused Lee's fall. Even so, the risks of such choices are inherent in riding any trail. And the risk cannot be confined as narrowly as Lee attempts in her argument, to mud and vines. The risk inherent in trail riding is that a horse will be spooked by natural conditions, if not mud and vines, then birds or shadows.

■ Not every injury that occurs during equine activity is the result of inherent risk. An unrelated risk, one that occurs during the activity simply by coincidence, is not inherent in the activity. For example, had Loftin accidentally driven a vehicle into Lee while she was waiting by the stables to embark on the trail ride, Loftin's liability would not be limited by section 87.003. The accident would have been wholly unrelated to any equine activity. On the other hand, had Lee been struck by a horse trailer while unloading the horse she was to ride on the trail, her injury would have resulted from a risk inherent in equine activity because the two were directly related.

■ Whether risks are inherent in equine activity may sometimes raise fact issues. The Act suggests, however, that determining what risks are inherent should be based on a common-sense understanding of the nature of equine activities. In this case, all the causes of Lee's injury—the propensity of her horse to react to trail conditions, the unpredictability of that reaction, the conditions themselves, and Loftin's choice of trails—fall within the risks listed in section 87.003. Unless Lee's injury was also caused by Loftin's failure to determine her ability under section 87.004(2), Loftin's liability is limited as a matter of law.

## IV

Section 87.004(2) denies the immunity afforded by section 87.003 to a person who

18. *Id.* § 87.004.

19. *Marshall v. Ranne,* 511 S.W.2d 255, 257–259 (Tex.1974) (citing Restatement of Torts §§ 507, 509 (1938)).

20. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 485 (Tex.1998) ("[W]e do not lightly presume that the Legislature may have done a useless act." (citing *Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981))).

provides an equine animal without making "a reasonable and prudent effort to determine the ability of the participant to engage safely in the equine activity and determine the ability of the participant to safely manage the equine animal, taking into account the participant's representations of ability".[21] Lee argues, and the court of appeals held, that fact issues remain whether Loftin may be liable under this provision.[22]

▮ Section 87.004(2) does not expressly require the failure to have resulted in the injury. It can be read to say that a person who fails to make the prescribed determination of a participant's ability is liable for *whatever* injury befalls, even one a thorough investigation could not have avoided. So construed, section 87.004(2) would impose strict liability for an inadequate determination of a participant's ability. But this is not a reasonable construction of the statute. For one thing, the express purpose of the Act is to limit liability, not create strict liability. For another, section 87.004 contains exceptions to section 87.003's limitation on *existing* liability. Each of the other four provisions of section 87.004 requires the specified misconduct to have caused the injury, thus leaving liability as if section 87.003 did not exist. A provision creating strict liability for the first time cannot fairly be said to be an exception to a limitation on existing liability. Finally, the requirement of causation is strongly implied. Reading from the beginning of the sentence, section 87.004 provides: *"A person ... is liable for ... damage ... caused by a participant in* an equine activity if ... *the person* provid-

ed the equine animal and ... did not ... determine the ability of *the participant....*"[23] The provision connects the damage caused with the failure to determine ability; it does not suggest that liability would result without the connection. Accordingly, we hold that section 87.004(2) applies only when the failure to make the required determination is itself the cause of the damage.

▮ Lee argues, and a majority of the court of appeals held, that Loftin should have done more to determine Lee's ability to ride trail, pointing out that Loftin asked her no questions. Loftin counters that she already knew all there was to know about Lee's ability without questioning further— that though Lee had raised horses for years, she rode infrequently. Also, as they began their ride, Loftin could see that Lee had no trouble mounting her horse. Under these circumstances, she contends, she satisfied the "reasonable and prudent effort" standard of section 87.004(2). She and amici curiae [24] argue that the Act does not contemplate that a person must submit to interrogation before being provided a horse to ride.

▮ We agree that section 87.004(2) does not require a formal, searching inquiry. Lee does not contend that any further inquiry by Loftin into her ability to ride could have prevented the accident. Therefore, section 87.004(2) does not apply. Lee asserts that Loftin, knowing what she knew, should have chosen another trail. But the statute limits liability for such a claim.

\* \* \*

**21.** Tex. Civ. Prac. & Rem.Code § 87.004(2).

**22.** 277 S.W.3d 519, 531–532 (Tex.App.-Tyler 2009).

**23.** Tex. Civ. Prac. & Rem.Code § 87.004 (emphasis added).

**24.** Amicus briefs supporting Loftin have been filed by the Texas Farm Bureau and the Texas Quarter Horse Association.

As a matter of law, Loftin's liability was limited by the Act, and the trial court properly granted summary judgment for Loftin. Therefore, the judgment of the court of appeals is reversed and judgment rendered that the Lees take nothing.