

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00288-CV

GREG HILZ, INDIVIDUALLY AND                                    APPELLANTS
AS NEXT FRIEND (AS FATHER
AND SOLE LEGAL GUARDIAN)
FOR CIARRA HILZ, AND CIARRA
HILZ

V.

RICHARD RIEDEL                                                    APPELLEE

----------

### FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This case involves the Texas Equine Limitation of Liability Act (the Act).
*See* Tex. Civ. Prac. & Rem. Code Ann. §§ 87.001–.005 (West 2011). Appellants
Greg Hilz, individually and as next friend (as father and sole legal guardian) for

---

[1]*See* Tex. R. App. P. 47.4.

Ciarra Hilz, and Ciarra Hilz appeal the trial court's grant of summary judgment in favor of Appellee Richard Riedel. We will reverse and remand.

## II. BACKGROUND

Thirteen-year-old Ciarra, Greg's daughter, and Steven, Richard's son, were friends. Sometime in early May 2010, Ciarra went to Steven's house to "hang out," swim, and look at several horses owned by Richard. Ciarra did not ride any of the horses that day, but she expressed an interest in doing so at a later date.

Several weeks later, on May 30, 2010, Greg drove Ciarra to Steven's house so that Ciarra could ride one of Richard's horses and then swim. Ciarra had taken horse-riding lessons when she was younger and had ridden horses at summer camp the previous two summers, but in Greg's opinion, Ciarra was not "even an intermediate-level horse rider." In light of Ciarra's "relative lack of experience with horses," and wanting to protect her from injury, Greg claims that when he dropped Ciarra off at Steven's house, he told Richard that he did not want Ciarra to ride a horse outside of the roughly forty-foot by sixty-foot round pen located on Richard's property. Greg "believed that the pen was a controlled environment in which the likelihood that Ciarra would be injured would be significantly diminished." Richard, on the other hand, claims that Greg did not say anything about where he wanted Ciarra to ride a horse. According to Richard, he and Greg briefly discussed Ciarra's horse-riding experience, and Greg said that Ciarra was excited to ride a horse. Greg then left.

2

Richard rode "Logan," a five-year-old male quarter horse, in the pen and questioned Ciarra about her horse-riding experience, including what type of riding she had done. Ciarra told Richard that she was "better than average" and that she rode both "English" and "Western." Richard then allowed Ciarra to ride Logan in the pen for approximately thirty to forty-five minutes. According to Richard, during this time he observed how Ciarra "sat" on Logan while he walked, trotted, and cantered in the pen; how Ciarra controlled Logan; and how Logan reacted to Ciarra.

Once Ciarra confirmed to Richard that she was comfortable riding Logan, Ciarra, riding Logan, and Richard, riding "Leta," a fifteen-year-old female quarter horse, proceeded out of the pen and over to a pasture owned by Richard's neighbors, the Wisniewskis. Ciarra testified in her deposition that instead of asking Richard if she could ride Logan in the pasture, Richard simply "assumed" that Ciarra wanted to ride Logan in the pasture and permitted her to do so, provided that she felt comfortable riding Logan. Richard, however, claims that Ciarra asked him multiple times that day if she could ride in the pasture and that he allowed her to do so only after he "assessed that Ciarra had capable riding skills and abilities and received reassurance from Ciarra that she was comfortable riding Logan in the pasture."

At some point after Ciarra had ridden in the middle of the pasture for approximately thirty minutes (galloping and trotting), Logan turned and started running as fast as he could—or bolted—towards a tree. Ciarra tried to pull

3

Logan's head to the side to turn him away from the tree, but Logan ran Ciarra into the tree, and she fell to the ground. In addition to numerous cuts, a tree limb "impaled" Ciarra's side and went into her groin, causing a "five-minute bleed," according to Greg, and she sustained a broken pelvis. Ciarra was taken to the hospital, where she stayed for a week and had multiple surgeries performed. Ciarra later opined that she thought Logan reacted like he did because he wanted Ciarra off of him—it was hot, Logan was probably tired, and he "didn't want to be ridden."

Appellants sued Richard in September 2010 to recover damages for the injuries sustained by Ciarra, alleging claims for negligence, negligence per se, premises liability, and violation of the recreational use statute.[2] Richard filed a traditional and no-evidence motion for summary judgment, arguing that Appellants' claims were barred by the Act and that several exceptions to the Act's limitation on liability did not apply to permit any liability. Appellants responded and filed objections to Richard's motion. Although the trial court granted Appellants' objection that Richard's motion should not be considered a no-evidence motion for summary judgment, the trial court—considering Richard's motion as a traditional motion for summary judgment—granted Richard summary judgment on all of Appellants' claims.

### III. EXCEPTIONS TO LIMITATION ON LIABILITY

---

[2]Appellants also sued the Wisniewskis, but those claims were later nonsuited.

4

In their only issue, Appellants argue that the trial court erred by rendering summary judgment for Richard because (a) the order grants relief on grounds not presented in Richard's motion for summary judgment, (b) a genuine issue of material fact exists regarding Richard's liability under two exceptions to the Act's limitation on liability—civil practice and remedies code sections 87.004(2) and (4), and (c) the Act is unconstitutional as applied to Appellants for violating the open courts guarantee of the Texas constitution. We address Appellants' procedural argument in the context of considering the section 87.004(4) argument, and in light of our holdings, we do not address Appellants' open courts issue. *See* Tex. R. App. P. 47.1.

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding

5

evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

Section 87.003 of the Act states that "[e]xcept as provided by Section 87.004, any person . . . is not liable for . . . damages arising from the personal injury or death of a participant in an equine activity . . . if the . . . injury . . . results from the dangers or conditions that are an inherent risk of an equine activity." Tex. Civ. Prac. & Rem. Code Ann. § 87.003.[3] Richard spends a considerable amount of effort explaining why his liability is limited by section 87.003, but Appellants unambiguously conceded in their summary judgment response that Ciarra was injured while participating in an "equine activity" and that her injuries resulted from dangers that were an "inherent risk" of an equine activity. Thus, Appellants acknowledge that section 87.003 limits Richard's liability. They argue, however, that two exceptions to the Act's limitation on liability contained in sections 87.004(2) and (4) apply to establish Richard's liability for Ciarra's

---

[3]The legislature amended the Act in 2011 to substitute the term "farm animal" for "equine." *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 896, §§ 2–5, 2011 Tex. Sess. Law Serv. 2287, 2289 (West). The changes apply only to a cause of action that accrues on or after the effective date of the statute, June 17, 2011. *Id.* § 6. Because Appellants' claim accrued before the effective date of the amended Act, we refer to the prior version of the Act.

injuries. Under section 87.004, a person is liable for damages arising from personal injury or death caused by a participant in an equine activity if:

> (2) the person provided the equine or livestock animal and the person did not make a reasonable and prudent effort to determine the ability of the participant to engage safely in the equine activity or livestock show and determine the ability of the participant to safely manage the equine or livestock animal, taking into account the participant's representations of ability; [or]
>
> . . . .
>
> (4) the person committed an act or omission with willful or wanton disregard for the safety of the participant and that act or omission caused the injury.

*Id.* § 87.004(2), (4).

## A. Section 87.004(2)

In *Loftin v. Lee*, Lee fell to the ground and was injured when the horse that she was riding through a low-lying, muddy area bolted. 341 S.W.3d 352, 354–55 (Tex. 2011). Lee argued that Loftin should have done more to determine Lee's ability to ride trail, pointing out that Loftin asked her no questions, but Loftin responded that she already knew all there was to know about Lee's ability and that she had observed that Lee had no trouble mounting her horse. *Id.* at 359. The supreme court held that the court of appeals erred by determining that a fact issue existed regarding whether Loftin made the required ability determinations under section 87.004(2). *Id.* at 359–60. It reasoned that "section 87.004(2) applies only when the failure to make the required determination is itself the

7

cause of the damage" and determined that "section 87.004(2) does not require a formal, searching inquiry." *Id.*

Compared to the determination made by Loftin of Lee's riding ability in *Loftin*, in this case, Richard's inquiry into Ciarra's ability to safely ride and manage Logan would, at first glance, appear to be adequate to demonstrate section 87.004(2)'s inapplicability—Richard spoke to Greg and Ciarra about Ciarra's horse-riding experience and observed Ciarra ride Logan in the pen for approximately thirty to forty-five minutes. *See id.* But this assessment would be incorrect because unlike Lee in *Loftin*, Greg produced additional summary judgment evidence that raised a fact issue as to section 87.004(2)'s applicability.

First, Greg is Ciarra's father and sole legal guardian. He stated in his affidavit that he specifically told Richard that he *did not* want thirteen-year-old Ciarra to ride a horse outside of the pen. Unlike Richard, who based his decision to allow Ciarra to ride outside of the pen upon information that he gathered the same day of the incident, Greg based his instruction prohibiting Ciarra from riding outside of the pen upon his knowledge of Ciarra's riding experience that he had gathered over the course of years as her father. Despite Greg's alleged express directive, Richard (a) opted to perform an independent evaluation of Ciarra's ability to safely ride outside of the pen, (b) substituted his opinion of Ciarra's abilities for Greg's opinion about Greg's own daughter's ability to safely ride outside of the pen, and (c) countermanded Greg's instruction to limit Ciarra's riding to inside of the pen. We hold that under these facts—where Richard

8

purportedly acted directly contrary to Greg's express instruction that Ciarra was not permitted to ride outside of the pen—Appellants raised a genuine issue of material fact regarding whether Richard made a reasonable and prudent effort to determine Ciarra's ability to safely ride and manage Logan. *See* Tex. Civ. Prac. & Rem. Code Ann. § 87.004(2).

Richard argues that section 87.004(2) does not apply because there is no causal nexus between Ciarra's injuries and Richard's alleged failure to make the required determination of Ciarra's ability to safely ride and manage Logan. He contends that the Act "would be meaningless if the rule is that when a participant sustains an injury, the determination of the participant's riding ability was *per se* unreasonable or not prudent." We agree that section 87.004(2) does not impose strict liability for an inadequate determination. *See Loftin*, 341 S.W.3d at 359 (explaining that section 87.004(2) could not be construed to impose strict liability for an inadequate determination of a participant's ability). But here, Ciarra would not have sustained her injuries in the pasture had Richard not countermanded Greg's instruction that Ciarra was prohibited from riding outside of the pen. Further, unlike in *Loftin*, where Lee did not "contend that any further inquiry by Loftin into [Lee's] ability to ride could have prevented the accident," Greg argues that Richard—who was armed with conflicting information about Ciarra's riding ability—should have made further inquiry with Greg to determine whether he still opined that riding outside of the pen was inappropriate for Ciarra's skill level. *See id.*

9

Taking as true all evidence favorable to Appellants and indulging every reasonable inference and resolving any doubts in their favor, we hold that Appellants produced summary judgment evidence raising a genuine issue of material fact about whether Richard made a "faulty assessment" under section 87.004(2) of Ciarra's abilities to safely ride and manage Logan. *See* Tex. Civ. Prac. & Rem. Code Ann. § 87.004(2); *Loftin*, 341 S.W.3d at 356. We sustain this part of Appellants' issue.

## B. Section 87.004(4)

Appellants argue under another part of their only issue that the trial court erroneously granted Richard summary judgment on Appellants' claim under civil practice and remedies code section 87.004(4) because Richard did not move for summary judgment on that ground. Richard responds that he did move for summary judgment on Appellants' section-87.004(4) claim and that any error in granting summary judgment on that ground was harmless.

Unaddressed issues or claims cannot be a basis for summary judgment. *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983). When a plaintiff amends its pleadings after a defendant has moved for summary judgment, the defendant must ordinarily file an amended motion for summary judgment to be entitled to prevail on the entirety of the plaintiff's case. *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no pet.). An amended or supplemental motion for summary judgment is not required, however, when the amended petition essentially reiterates

10

previously pleaded causes of action, when a ground asserted in a motion for summary judgment conclusively negates a common element of the newly and previously pleaded claims, or when the original motion is broad enough to encompass the newly asserted claims. *Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

Here, Appellants did not allege in their original petition that section 87.004(4) was applicable. They argued for the first time in their first amended original petition that Richard was liable under section 87.004(4), and they alleged the same claim in their second amended original petition, which they filed just before filing their summary judgment response. Richard did not move for summary judgment on the claims alleged by Appellants in their first amended original petition, which had been on file, nor did Richard amend or supplement his motion for summary judgment after Appellants filed their second amended original petition. Instead, Richard moved for summary judgment on the claims alleged by Appellants in their original petition. This is apparent because Richard observed in his motion that "there have been no allegations in this suit that . . . this accident was the result of any willful or intentional acts" and that "[t]he only two exceptions that have been alleged are" sections 87.004(2) and (3).[4] These contentions are clearly accurate as to Appellants' original petition, not their amended petitions. Richard's motion then argued in detail—with

_____

[4]Also, Richard attached Appellants' original petition to his motion for summary judgment.

11

extensive references to his attached summary judgment evidence—why he is entitled to summary judgment on Appellants' claims under sections 87.004(2) and (3).[5]  Richard's motion did not include any argument as to section 87.004(4). Accordingly, Richard did not move for summary judgment on Appellants' claim under section 87.004(4).

Richard argues that he did move for summary judgment on Appellants' section 87.004(4) claim because he stated in his motion, "As to the exceptions enumerated above, there has been no evidence presented or pleading made by Plaintiff that exceptions (1), *(4)*, (5), or (6) are applicable to this case." [Emphasis added.]  While this statement may have been sufficient under a no-evidence motion for summary judgment, the trial court granted Appellants' objection to Richard's no-evidence motion for summary judgment and expressly granted Richard's traditional motion for summary judgment.  Richard made no effort in his motion to show that he was entitled to summary judgment on traditional grounds on Appellants' section-87.004(4) claim, nor was his motion broad enough to encompass Appellants' later-asserted claim under section 87.004(4).

Richard additionally argues that any error in granting summary judgment on Appellants' section-87.004(4) claim was harmless because the trial court properly granted Richard summary judgment on Appellants' section-87.004(2)

---

[5]Appellants did not allege in their second amended original petition that the exception contained in section 87.004(3) was applicable, nor do they make any such argument on appeal.

12

claim, and "the finding [that] the Act applies to [Richard] and that the reasonable and prudent inquiry exception does not apply as a matter of law, necessarily subsumes and precludes a finding [that] the willful and wanton exception applies." This argument is unpersuasive because we concluded above that the trial court erred by granting summary judgment on Appellants' section-87.004(2) claim.

We hold that the trial court erred by granting Richard summary judgment on Appellants' section-87.004(4) claim. We sustain this part of Appellants' only issue. We need not address Appellants' open courts argument.

## IV. CONCLUSION

Having held that the trial court erred by granting summary judgment for Richard on Appellants' claims under civil practice and remedies code sections 87.004(2) and (4), we reverse the trial court's order granting Richard summary judgment and remand the case to the trial court.


BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED: June 14, 2012

13