02-11-288-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00288-CV

 

 


 
 
 Greg Hilz, Individually and as Next Friend (as
 Father and Sole Legal Guardian) for Ciarra Hilz, and Ciarra Hilz
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Richard Riedel
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

FROM THE 141st
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          This
case involves the Texas Equine Limitation of Liability Act (the Act).  See
Tex. Civ. Prac. & Rem. Code Ann. §§ 87.001–.005 (West 2011).  Appellants
Greg Hilz, individually and as next friend (as father and sole legal guardian)
for Ciarra Hilz, and Ciarra Hilz appeal the trial court’s grant of summary
judgment in favor of Appellee Richard Riedel.  We will reverse and remand.

II.  Background

          Thirteen-year-old
Ciarra, Greg’s daughter, and Steven, Richard’s son, were friends.  Sometime in early
May 2010, Ciarra went to Steven’s house to “hang out,” swim, and look at
several horses owned by Richard.  Ciarra did not ride any of the horses that
day, but she expressed an interest in doing so at a later date.

          Several
weeks later, on May 30, 2010, Greg drove Ciarra to Steven’s house so that Ciarra
could ride one of Richard’s horses and then swim.  Ciarra had taken
horse-riding lessons when she was younger and had ridden horses at summer camp
the previous two summers, but in Greg’s opinion, Ciarra was not “even an
intermediate-level horse rider.”  In light of Ciarra’s “relative lack of
experience with horses,” and wanting to protect her from injury, Greg claims that
when he dropped Ciarra off at Steven’s house, he told Richard that he did not
want Ciarra to ride a horse outside of the roughly forty-foot by sixty-foot round
pen located on Richard’s property.  Greg “believed that the pen was a
controlled environment in which the likelihood that Ciarra would be injured
would be significantly diminished.”  Richard, on the other hand, claims that
Greg did not say anything about where he wanted Ciarra to ride a horse.  According
to Richard, he and Greg briefly discussed Ciarra’s horse-riding experience, and
Greg said that Ciarra was excited to ride a horse.  Greg then left.

          Richard
rode “Logan,” a five-year-old male quarter horse, in the pen and questioned
Ciarra about her horse-riding experience, including what type of riding she had
done.  Ciarra told Richard that she was “better than average” and that she rode
both “English” and “Western.”  Richard then allowed Ciarra to ride Logan in the pen for approximately
thirty to forty-five minutes.  According to Richard, during this time he
observed how Ciarra “sat” on Logan while he walked, trotted, and cantered in
the pen; how Ciarra controlled Logan; and how Logan reacted to Ciarra.

Once Ciarra confirmed to
Richard that she was comfortable riding Logan, Ciarra, riding Logan, and
Richard, riding “Leta,” a fifteen-year-old female quarter horse, proceeded out
of the pen and over to a pasture owned by Richard’s neighbors, the Wisniewskis.
 Ciarra testified in her deposition that instead of asking Richard if she could
ride Logan in the pasture, Richard simply “assumed” that Ciarra wanted to ride
Logan in the pasture and permitted her to do so, provided that she felt
comfortable riding Logan.  Richard, however, claims that Ciarra asked him
multiple times that day if she could ride in the pasture and that he allowed
her to do so only after he “assessed that Ciarra had capable riding skills and
abilities and received reassurance from Ciarra that she was comfortable riding
Logan in the pasture.”

At some point after Ciarra had
ridden in the middle of the pasture for approximately thirty minutes (galloping
and trotting), Logan turned and started running as fast as he could—or
bolted—towards a tree.  Ciarra tried to pull Logan’s head to the side to turn
him away from the tree, but Logan ran Ciarra into the tree, and she fell to the
ground.  In addition to numerous cuts, a tree limb “impaled” Ciarra’s side and went
into her groin, causing a “five-minute bleed,” according to Greg, and she sustained
a broken pelvis.  Ciarra was taken to the hospital, where she stayed for a week
and had multiple surgeries performed.  Ciarra later opined that she thought
Logan reacted like he did because he wanted Ciarra off of him—it was hot, Logan
was probably tired, and he “didn’t want to be ridden.”

Appellants sued Richard in
September 2010 to recover damages for the injuries sustained by Ciarra,
alleging claims for negligence, negligence per se, premises liability, and
violation of the recreational use statute.[2]  Richard filed a
traditional and no-evidence motion for summary judgment, arguing that
Appellants’ claims were barred by the Act and that several exceptions to the
Act’s limitation on liability did not apply to permit any liability.  Appellants
responded and filed objections to Richard’s motion.  Although the trial court
granted Appellants’ objection that Richard’s motion should not be considered a
no-evidence motion for summary judgment, the trial court—considering Richard’s
motion as a traditional motion for summary judgment—granted Richard summary
judgment on all of Appellants’ claims.

III.  Exceptions to Limitation on Liability

          In
their only issue, Appellants argue that the trial court erred by rendering
summary judgment for Richard because (a) the order grants relief on
grounds not presented in Richard’s motion for summary judgment, (b) a
genuine issue of material fact exists regarding Richard’s liability under two
exceptions to the Act’s limitation on liability—civil practice and remedies
code sections 87.004(2) and (4), and (c) the Act is unconstitutional as
applied to Appellants for violating the open courts guarantee of the Texas
constitution.  We address Appellants’ procedural argument in the context of considering
the section 87.004(4) argument, and in light of our holdings, we do not address
Appellants’ open courts issue.  See Tex. R. App. P. 47.1.

          In
a summary judgment case, the issue on appeal is whether the movant met the
summary judgment burden by establishing that no genuine issue of material fact
exists and that the movant is entitled to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,
289 S.W.3d 844, 848 (Tex. 2009).  We review a summary judgment de novo.  Travelers
Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010).

          We
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant’s favor.  20801,
Inc. v. Parker, 249 S.W.3d 392, 399 (Tex. 2008); Provident Life &
Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  We consider
the evidence presented in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could and disregarding
evidence contrary to the nonmovant unless reasonable jurors could not.  Mann
Frankfort, 289 S.W.3d at 848.  We must consider whether reasonable and
fair-minded jurors could differ in their conclusions in light of all of the
evidence presented.  See Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d
566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802, 822–24
(Tex. 2005).

          Section
87.003 of the Act states that “[e]xcept as provided by Section 87.004, any
person . . . is not liable for . . . damages
arising from the personal injury or death of a participant in an equine activity . . . if
the . . . injury . . . results from the
dangers or conditions that are an inherent risk of an equine activity.”  Tex.
Civ. Prac. & Rem. Code Ann. § 87.003.[3]  Richard spends a
considerable amount of effort explaining why his liability is limited by
section 87.003, but Appellants unambiguously conceded in their summary judgment
response that Ciarra was injured while participating in an “equine activity”
and that her injuries resulted from dangers that were an “inherent risk” of an
equine activity.  Thus, Appellants acknowledge that section 87.003 limits
Richard’s liability.  They argue, however, that two exceptions to the Act’s
limitation on liability contained in sections 87.004(2) and (4) apply to
establish Richard’s liability for Ciarra’s injuries.  Under section 87.004, a
person is liable for damages arising from personal injury or death caused by a
participant in an equine activity if:

(2)     the person
provided the equine or livestock animal and the person did not make a
reasonable and prudent effort to determine the ability of the participant to
engage safely in the equine activity or livestock show and determine the
ability of the participant to safely manage the equine or livestock animal,
taking into account the participant’s representations of ability; [or]

 

          . . . .

 

(4)     the person
committed an act or omission with willful or wanton disregard for the safety of
the participant and that act or omission caused the injury.

Id. § 87.004(2),
(4).

          A.      Section
87.004(2)

          In
Loftin v. Lee, Lee fell to the ground and was injured when the horse
that she was riding through a low-lying, muddy area bolted.  341 S.W.3d 352, 354–55
(Tex. 2011).  Lee argued that Loftin should have done more to determine Lee’s
ability to ride trail, pointing out that Loftin asked her no questions, but
Loftin responded that she already knew all there was to know about Lee’s
ability and that she had observed that Lee had no trouble mounting her horse.  Id.
at 359.  The supreme court held that the court of appeals erred by determining
that a fact issue existed regarding whether Loftin made the required ability
determinations under section 87.004(2).  Id. at 359–60.  It reasoned
that “section 87.004(2) applies only when the failure to make the required
determination is itself the cause of the damage” and determined that “section
87.004(2) does not require a formal, searching inquiry.”  Id.

          Compared
to the determination made by Loftin of Lee’s riding ability in Loftin, in
this case, Richard’s inquiry into Ciarra’s ability to safely ride and manage
Logan would, at first glance, appear to be adequate to demonstrate section
87.004(2)’s inapplicability—Richard spoke to Greg and Ciarra about Ciarra’s horse-riding
experience and observed Ciarra ride Logan in the pen for approximately thirty
to forty-five minutes.  See id.  But this assessment would be incorrect
because unlike Lee in Loftin, Greg produced additional summary judgment
evidence that raised a fact issue as to section 87.004(2)’s applicability.

          First,
Greg is Ciarra’s father and sole legal guardian.  He stated in his affidavit
that he specifically told Richard that he did not want thirteen-year-old
Ciarra to ride a horse outside of the pen.  Unlike Richard, who based his
decision to allow Ciarra to ride outside of the pen upon information that he
gathered the same day of the incident, Greg based his instruction prohibiting Ciarra
from riding outside of the pen upon his knowledge of Ciarra’s riding experience
that he had gathered over the course of years as her father.  Despite Greg’s alleged
express directive, Richard (a) opted to perform an independent evaluation
of Ciarra’s ability to safely ride outside of the pen, (b) substituted his
opinion of Ciarra’s abilities for Greg’s opinion about Greg’s own daughter’s ability
to safely ride outside of the pen, and (c) countermanded Greg’s instruction
to limit Ciarra’s riding to inside of the pen.  We hold that under these
facts—where Richard purportedly acted directly contrary to Greg’s express instruction
that Ciarra was not permitted to ride outside of the pen—Appellants raised a
genuine issue of material fact regarding whether Richard made a reasonable and
prudent effort to determine Ciarra’s ability to safely ride and manage Logan.  See
Tex. Civ. Prac. & Rem. Code Ann. § 87.004(2).

          Richard
argues that section 87.004(2) does not apply because there is no causal nexus
between Ciarra’s injuries and Richard’s alleged failure to make the required
determination of Ciarra’s ability to safely ride and manage Logan.  He contends
that the Act “would be meaningless if the rule is that when a participant
sustains an injury, the determination of the participant’s riding ability was per se
unreasonable or not prudent.”  We agree that section 87.004(2) does not impose
strict liability for an inadequate determination.  See Loftin, 341
S.W.3d at 359 (explaining that section 87.004(2) could not be construed to
impose strict liability for an inadequate determination of a participant’s
ability).  But here, Ciarra would not have sustained her injuries in the
pasture had Richard not countermanded Greg’s instruction that Ciarra was
prohibited from riding outside of the pen.  Further, unlike in Loftin,
where Lee did not “contend that any further inquiry by Loftin into [Lee’s]
ability to ride could have prevented the accident,” Greg argues that
Richard—who was armed with conflicting information about Ciarra’s riding
ability—should have made further inquiry with Greg to determine whether he
still opined that riding outside of the pen was inappropriate for Ciarra’s
skill level.  See id.

          Taking
as true all evidence favorable to Appellants and indulging every reasonable
inference and resolving any doubts in their favor, we hold that Appellants produced
summary judgment evidence raising a genuine issue of material fact about whether
Richard made a “faulty assessment” under section 87.004(2) of Ciarra’s
abilities to safely ride and manage Logan.  See Tex. Civ. Prac. &
Rem. Code Ann. § 87.004(2); Loftin, 341 S.W.3d at 356.  We sustain
this part of Appellants’ issue.

          B.      Section
87.004(4)

          Appellants
argue under another part of their only issue that the trial court erroneously
granted Richard summary judgment on Appellants’ claim under civil practice and
remedies code section 87.004(4) because Richard did not move for summary
judgment on that ground.  Richard responds that he did move for summary
judgment on Appellants’ section-87.004(4) claim and that any error in granting
summary judgment on that ground was harmless.

          Unaddressed
issues or claims cannot be a basis for summary judgment.  Chessher v. Sw.
Bell Tel. Co., 658 S.W.2d 563, 564 (Tex. 1983).  When a plaintiff amends
its pleadings after a defendant has moved for summary judgment, the defendant
must ordinarily file an amended motion for summary judgment to be entitled to
prevail on the entirety of the plaintiff’s case.  Blancett v. Lagniappe
Ventures, Inc., 177 S.W.3d 584, 592 (Tex. App.—Houston [1st Dist.] 2005, no
pet.).  An amended or supplemental motion for summary judgment is not required,
however, when the amended petition essentially reiterates previously pleaded
causes of action, when a ground asserted in a motion for summary judgment
conclusively negates a common element of the newly and previously pleaded
claims, or when the original motion is broad enough to encompass the newly
asserted claims.  Rotating Servs. Indus., Inc. v. Harris, 245 S.W.3d
476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). 

          Here,
Appellants did not allege in their original petition that section 87.004(4) was
applicable.  They argued for the first time in their first amended original
petition that Richard was liable under section 87.004(4), and they alleged the same
claim in their second amended original petition, which they filed just before
filing their summary judgment response.  Richard did not move for summary
judgment on the claims alleged by Appellants in their first amended original
petition, which had been on file, nor did Richard amend or supplement his
motion for summary judgment after Appellants filed their second amended
original petition.  Instead, Richard moved for summary judgment on the claims
alleged by Appellants in their original petition.  This is apparent because Richard
observed in his motion that “there have been no allegations in this suit that . . . this
accident was the result of any willful or intentional acts” and that “[t]he
only two exceptions that have been alleged are” sections 87.004(2) and (3).[4]
 These contentions are clearly accurate as to Appellants’ original petition,
not their amended petitions.  Richard’s motion then argued in detail—with
extensive references to his attached summary judgment evidence—why he is
entitled to summary judgment on Appellants’ claims under sections 87.004(2) and
(3).[5]
 Richard’s motion did not include any argument as to section 87.004(4).  Accordingly,
Richard did not move for summary judgment on Appellants’ claim under section
87.004(4).

          Richard
argues that he did move for summary judgment on Appellants’ section 87.004(4)
claim because he stated in his motion, “As to the exceptions enumerated above,
there has been no evidence presented or pleading made by Plaintiff that
exceptions (1), (4), (5), or (6) are applicable to this case.”  [Emphasis
added.]  While this statement may have been sufficient under a no-evidence
motion for summary judgment, the trial court granted Appellants’ objection to
Richard’s no-evidence motion for summary judgment and expressly granted
Richard’s traditional motion for summary judgment.  Richard made no effort in
his motion to show that he was entitled to summary judgment on traditional
grounds on Appellants’ section-87.004(4) claim, nor was his motion broad enough
to encompass Appellants’ later-asserted claim under section 87.004(4).

          Richard
additionally argues that any error in granting summary judgment on Appellants’
section-87.004(4) claim was harmless because the trial court properly granted
Richard summary judgment on Appellants’ section-87.004(2) claim, and “the
finding [that] the Act applies to [Richard] and that the reasonable and prudent
inquiry exception does not apply as a matter of law, necessarily subsumes and
precludes a finding [that] the willful and wanton exception applies.”  This
argument is unpersuasive because we concluded above that the trial court erred
by granting summary judgment on Appellants’ section-87.004(2) claim.

          We
hold that the trial court erred by granting Richard summary judgment on
Appellants’ section-87.004(4) claim.  We sustain this part of Appellants’ only
issue.  We need not address Appellants’ open courts argument.

IV.  Conclusion

          Having
held that the trial court erred by granting summary judgment for Richard on
Appellants’ claims under civil practice and remedies code sections 87.004(2)
and (4), we reverse the trial court’s order granting Richard summary judgment
and remand the case to the trial court.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
DAUPHINOT,
MCCOY, and MEIER, JJ.

 

DELIVERED:  June 14, 2012









[1]See Tex. R. App. P. 47.4.





[2]Appellants also sued the Wisniewskis,
but those claims were later nonsuited.





[3]The legislature amended
the Act in 2011 to substitute the term “farm animal” for “equine.”  See
Act of May 23, 2011, 82nd Leg., R.S., ch. 896, §§ 2–5, 2011 Tex.
Sess. Law Serv. 2287, 2289 (West).  The changes apply only to a cause of action
that accrues on or after the effective date of the statute, June 17,
2011.  Id. § 6.  Because Appellants’ claim accrued before the
effective date of the amended Act, we refer to the prior version of the Act.





[4]Also, Richard attached
Appellants’ original petition to his motion for summary judgment.





[5]Appellants did not allege
in their second amended original petition that the exception contained in
section 87.004(3) was applicable, nor do they make any such argument on appeal.